**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

FILED

MAY 1 3 2021

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

| | | |
|---|---|---|
| TATYANA BABAKAEVA and OLGA GUSKOVA, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. _2:21cv267_ |
| PTR INVESTMENTS, INC, TROY ROBERTSON, PATRICIA ROBERTSON, | ) ) ) ) | |
| 658 WATERS DRIVE, LLC and C. JEFFREY MOORE, | ) ) ) | PLAINTIFFS DEMAND TRIAL BY JURY |
| Defendants. | ) ) ) | |

## COMPLAINT

Plaintiffs, Tatyana Babakaeva, *pro se*, and Olga Guskova, *pro se*, hereby bring their

Complaint against Defendants upon their knowledge as to their personal circumstances and upon

information and belief as to all other matters.

### NATURE OF ACTION

1.      This is an action pursuant to the Fair Debt Collection Practices Act ("FDCPA"),

15 U.S.C. § 1692 *et seq.;* civil Racketeer Influenced and Corrupt Organizations ("RICO") Act

conspiracy, 18 U.S.C. §§ 1964, 1962; and state common-law torts.

### JURISDICTION AND VENUE

2.      This Court has original subject-matter jurisdiction pursuant to 15 U.S.C. §§

1692k(d),  28 U.S.C. § 1331, and supplemented jurisdiction exists for the state law claims

pursuant to 28 U.S.C. § 1367(a).

1

3.      Venue in this District and division is proper under 28 U.S.C. §§ 127(a),(c),

1391(b) in that all defendants reside, and a substantial part of the events or omissions giving rise

to these claims occurred, in this judicial district and in this division.

## PARTIES

4.      Plaintiff Tatyana Babakaeva ("Babakaeva"), is a natural person residing in

Suffolk, Virginia.

5.      Plaintiff Olga Guskova ("Guskova"), is a natural person residing in Virginia

Beach, Virginia.

6.      Defendant Troy Robertson is a natural person residing in this judicial district, and

is an officer and president of Defendant PTR Investments, Inc.

7.      Defendant Patricia (Patti) Robertson is a natural person residing in this judicial

district, and is an officer and vice president of Defendant PTR Investments, Inc.

8.      Defendant PTR Investments, Inc. is a Virginia corporation with its principal

office located in Virginia Beach, Virginia.

9.      Defendants Troy Robertson, Patricia Robertson and PTR Investments, Inc.

collectively are referred to as "PTR".

10.     Defendant C. Jeffrey Moore is a natural person residing in this judicial district,

and is a sole member of Defendant 658 Waters Drive, LLC.

11.     Defendant 658 Waters Drive, LLC is a Virginia limited liability company with its

principal office located in Virginia Beach, Virginia.

12.     Defendants  C. Jeffrey Moore and 658 Waters Drive, LLC collectively are

referred as "Waters".

## INTERSTATE COMMERCE

13.     The occurrences which gave rise to the claims of this action include commercial transactions between the Defendants, residents of Virginia, on one side, and residents of the States of Delaware and New York, on the other side.

## FACTS

### A. Background and Prior Events

14.     In 2013 Guskova's close friend Anthony Gargiulo conveyed to Guskova certain real estate property by deed of gift executed on March 29, 2013. The real estate property was a condominium located at 658 Waters Drive, Virginia Beach, Virginia ("the Condo").

15.     Anthony Gargiulo suggested Guskova to visit Attorney David R. Flynn ("Flynn") office to accept the gift. Flynn advised Guskova that in order to effectuate acceptance of said gift, she was required to sign some papers prepared for her by Flynn, which she did. The same day Guskova entered in possession of the Condo.

16.     In April 2014 Anthony Gargiulo passed away.

17.     Starting approximately in September of 2014 Guskova periodically was spending time abroad to take care for her father who became severely ill.

18.     In December 2014, Guskova for the first time reviewed the folder she was giving by Flynn on March 29, 2013, and she found there, among other papers, a notarized deed of gift, a notarized promissory note made by Olga Guskova to Anthony Gargiulo and a notarized deed of trust. The deed of trust assigned Flynn's business partner Scott N. Alperin of Alperin & Flynn, P.C. at 4605 Pembroke Lake Circle, Virginia Beach, VA 23455 as trustee. Further investigation revealed that on May 6, 2013 Flynn electronically filed an altered copy of this deed of trust ("the Deed of Trust") with the Clerk of Virginia Beach Circuit Court for recording. Flynn made such filing without authority and without existence of the underlying debt (Exhibit 1).

3

19.     Guskova did not borrow money and did not owed money to Anthony Garguilo, she did not know Scott N. Alperin. The original notarized promissory note was never delivered to Anthony Gargiulo or his agent or his successors. The original deed of trust was never delivered to Scott N. Alperin.

20.     In February 2015 Guskova received a letter from Scott N. Alperin dated January 29, 2015. The letter claimed that "*on or about March 29, 2013 [Guskova] borrowed money from Anthony Gargiulo*", and that Scott N. Alperin acted as a debt collector on the purported debt owed to the estate of Anthony Gargiulo. The letter threatened that if Guskova do not pay the purported debt promptly, the Condo would be sold at a foreclosure sale, and that Guskova would be forced to vacate the Condo and remove all her possessions (Exhibit 2).

21.     Scott N. Alperin knew that the original unaltered deed of trust was never in Scott N. Alperin's possession and that the original notarized promissory note was never delivered to Anthony Gargiulo.

22.     On or about February 4, 2015 Guskova sent Scott N. Alperin a letter disputing the alleged debt and requesting debt verification, which Scott N. Alperin did not ever provide.

23.     On or about June 4, 2015 Guskova received a letter from Robert Reed ("Reed"). The letter claimed that Reed was acting as both a debt collector and substitute trustee of Deed of Trust, and that the alleged debt and the Deed of Trust were assigned to Rachele Gargiulo and Lisa Cuomo ("Heirs") by settlement from estate of Anthony Gargiulo.

24.     The June 4, 2015 and subsequent letters from Reed claimed that "*on or about March 29, 2013 [Guskova] borrowed money from Anthony Gargiulo*", and affirmatively stated that the Heirs did not have the purported original promissory note in their possession.

25.     Guskova disputed the alleged debt and requested debt verification, which Reed did not ever provide.

4

26.     Instead, in carrying out Scott N. Alperin's threat of foreclosure, in August of 2015 Reed initiated foreclosure proceedings in execution of purported *"Credit Line Deed of Trust"*. A notice of foreclosure sale that Reed sent to Guskova was accompanied with a copy of a sworn affidavit made by the executrix of the Estate falsely claiming that the Deed of Trust was a *"Credit Line Deed of Trust."* The affidavit was made in the state of New York.

27.     Reed knew that he and/or Alperin did not have the original deed of trust, that there was no "credit line deed of trust" related to the Condo, that there was no original note or a lost-note affidavit, that Guskova was not under obligation to pay the purported debt, and that Reed did not have authority to initiate foreclosure proceedings to sell the Condo.

28.     On September 4, 2015 Guskova filed with the State Court an Emergency Petition to Enjoin Foreclosure, naming the purported substitute trustee Reed defendant. Petition requested that foreclosure be enjoined and deed of trust and the purported debt be canceled.

29.     During court proceeding on the Emergency Petition the Court held that Reed lacked ground to conduct foreclosure. On September 22, 2015 consent Order was entered providing that *"No further foreclosure proceedings under the March 29, 2013 Dead of Trust shall be had unless and until a final ruling is made on the enforceability of the March 29, 2013 Promissory Note entered into by the Petitioner"* (Exhibit 3). This Order has not been appealed, modified or vacated.

30.     Heirs did not pursue enforcement of the Note or debt collection for the next two years, therefore, considering their claim abandoned, on October 31, 2017 Guskova transferred 50% of interest in the Condo to Babakaeva.

## B. Occurrences Giving Rise to The Claims of This Complaint

31.     Scott N. Alperin, however, did not give up his threat to foreclose on the Condo. Realizing that the absence of the promissory note in possession of the purported creditors would preclude Scott N. Alperin from conducting foreclosure, Scott N. Alperin devised a plan to make up for the deficiency.

32.     Pursuing this plan, in the beginning of August of 2018 Scott N. Alperin prepared for Heirs' signing under oath a false "lost-note affidavit". To avoid a risk of prosecution of the Heirs for perjury, Scott N. Alperin made up a wording of the lost-note affidavit in a way that to create appearance of evidence supporting foreclosure but not containing obviously perjurious statements. The lost-note affidavit therefore attested to the fact that *"note made by Anthony Gargiulo was lost"*, and did not mention Guskova' obligation and/or her name at all (Exhibit 4). Despite the language of the affidavit stating that *"Attached is a copy of the Note"*, nothing was, in fact, attached.

33.     This lost-note affidavit was used by Scott N. Alperin and Defendants as evidence of the purported Guskova's debt in the subsequent non-judicial and judicial proceedings on the matter of the title to the Condo and the purported debt.

34.     On or about August 3, 2018 the purported Guskova's obligation was purchased by PTR for $30,000 from the Heirs, who were residents of Delaware (Rachele Gargiulo) and New York (Lisa Cuomo).

35.     On August 14, 2018, assignment of the Deed of Trust for no consideration from the Heirs to PTR was filed in the state court, without reference to the previously claimed *"Credit Line Deed of Trust"*.

36.     Scott N. Alperin also filed notice of substitution of trustee of the Deed of Trust that appointed Alperin Law PLLC (hereafter, Scott N. Alperin and Alperin Law PLLC are referred to, collectively, as "Alperin") as substitute trustee.

37.     Scott N. Alperin also prepared "Assignment of Note and Deed of Trust", which document was signed on August 3, 2018 by Heirs and PTR. The document falsely alleged that on March 29, 2013 Guskova delivered the Note to Anthony Gargiulo, and that on March 29, 2013 Guskova personally delivered the Deed of Trust to Alperin, which allegations were not true. Neither Heirs nor PTR had, or possibly could have, personal knowledge of such occurrences.

38.     PTR had knowledge that the documents PTR acquired from the Heirs did not, in fact, support the purported claim to, and interest in, the Condo and that, therefore, the Heirs did not transfer to PTR right to, and interest in, the property and/or the purported debt.

39.     PTR and Alperin had actual knowledge of standing injunction of the foreclosure proceedings imposed by September 22, 2015 consent Order.

40.     PTR, nevertheless, agreed to participate in Alperin's plan and to act in pursuing the common goal to obtain, unlawfully, money and property from Plaintiffs.

41.     In the end of September 2018, Plaintiffs received a letter from Scott N. Alperin of Alperin Law PLLC dated September 24, 2018, which letter was virtually identical to the Alperin's letter dated January 29, 2015. The letter claimed that "*on or about March 29, 2013 [Guskova] borrowed money from Anthony Gargiulo*", and that Alperin acted as both a debt collector on behalf of PTR in connection with the purported Guskova's debt, and as substitute trustee of the Deed of Trust. The letter threatened that if Guskova do not pay the purported debt promptly, the Condo would be sold at a foreclosure sale, and that Guskova would be forced to vacate the Condo and remove all her possessions (Exhibit 5). Plaintiffs responded with a letter

7

disputing the purported debt and the Alperin's authority to foreclose on the Condo. Plaintiffs also requested debt verification (Exhibit 6), which Alperin did not ever provide.

42.     On or about October 2, 2018 Patti Robertson, acting as an agent and officer of PTR Investments, LLC, in furtherance of the above-described plan, personally appeared at the Condo and engaged in harassing the tenant. Defendant Patti Robertson requested that the tenant permit her to inspect the Condo inside. When the tenant refused, Patti Robertson threatened the tenant with false claims that the Condo was going to be sold soon at a foreclosure sale and that the tenant would be required by an order of the court to vacate the Condo. Babakaeva sent to PTR a letter by which Babakaeva strongly objected such PTR's conduct and warned PTR that such conduct was contemptuous of the standing injunction (Exhibit 7).

43.     PTR and Alperin, however, did not give up. Despite Babakaeva's rightful objections, and notwithstanding the standing injunction, in furtherance of said plan to carry out the threat of foreclosure, PTR and Alperin, acting in concert, initiated a second foreclosure attempt, this time *"in execution of Deed of Trust"*.

44.     On November 14, 2018, Babakaeva filed Emergency Petition for Enforcement of Injunction Restraining Foreclosure ("Second Emergency Petition") which challenged the validity of the foreclosure proceedings on the ground of the standing injunction.

45.     Guskova was forced to return from abroad to protect her interests, to intervene to the new injunction case and to be present at the hearing on the Second Emergency Petition.

46.     On November 29, 2018 PTR filed a pleading in response to the Second Emergency Petition, which pleading introduced in exhibit a copy of a one-page document entitled "Note" that appeared to bear a copy of Guskova's signature but without a notary certificate, and showing alterations in the part containing payment terms. This purported

8

promissory note was not a copy of the original document signed by Guskova on March 29, 2013 which bore the original Guskova's signature and a notary stamp.

47.     During court proceedings on the Second Emergency Petition held on November 30, 2018 the Court ruled that Alperin and PTR lacked ground and authority to conduct foreclosure. Accordingly, the second foreclosure attempt was terminated by December 6, 2018 Court Order (Exhibit 8).

48.     On December 12, 2018 Plaintiffs filed joint Complaint to Quiet Title naming PTR sole defendant. In this Quiet Title action Plaintiffs requested decree of quiet title and cancellation of the Deed of Trust on the ground that it was filed without authority and without the underlying debt. On basis of this Quiet Title case, Plaintiffs filed notice of *Lis Pendens* which was properly recorded by the Clerk of State Court on December 27, 2018.

49.     PTR filed Answer and Counterclaim asserting breach of contract claim and three other claims that were essentially derivatives from the breach of contract claim. PTR sought the quiet title to the Condo and $600,000 in damages.

50.     The breach of contract claim was based on a theory that Anthony Gargiulo conveyed the Condo to Guskova by the deed of gift, but at the same time, sold her the same real estate property on loan terms.

51.     On October 9, 2019 Plaintiffs filed in the Quiet Title case their joint Motion for Partial Summary Judgment seeking dismissal with prejudice of the breach of contract count of Counterclaim on the ground of PTR's admissions to the fact that PTR never had the purported promissory note and/or any evidence of the underlying debt.

52.     Realizing that PTR did not have any defense and that the adverse judgment on the central claim of the action was imminent, PTR and Alperin, acting in concert in pursuing the goal to sue out from Plaintiffs the Condo and money, devised a plan to reset the litigation.

53.     Pursuing such plan, and acting in concert with PTR and C. Jeffrey Moore, on March 2, 2020 Alperin organized and registered with the State of Virginia, a limited liability company, 658 Waters Drive, LLC, ("Waters LLC") with a sole member C. Jeffrey Moore ("Moore"), and assigned Alperin as the initial registered agent (Exhibit 9). The name for the company was intentionally chosen to be similar to the physical location and address of the Plaintiffs' real estate property.

54.     Waters LLC does not have an independent office, does not have any employees, does not have any tangible assets, does not, and did not intend to, transact any business except attempting to collect the purported Guskova's debt.

55.     The express goal of organizing Waters LLC was to use it as an instrument in the ongoing Quiet Title litigation and as a sham party acting under direction and supervision of Alperin and in concert with PTR.

56.     Alperin's and Moore's intended goal of organizing, and registering with the state, the business named "658 Waters Drive, LLC" was to harass Plaintiffs, to disable the Plaintiffs' real estate property, and to make public records creating false appearance that such Waters' business had superior rights to, and control of, the Plaintiffs' real estate property with the goal to obtain money and property from Plaintiffs.

57.     Another Alperin' and Moore's purpose in creating Waters LLC was to shield Moore and Moore's other business(s)' assets from personal and corporate liability for the unlawful acts committed by Alperin and Moore against Plaintiffs' rights and interests.

58.     Alperin made the application for registration of Waters LLC, in concert with PTR and Moore, with malicious intent to injure Plaintiffs' property rights and/or with reckless disregard to Plaintiffs rights.

59.     Knowing and understanding that the Alperin's scheme was unlawful and involved fraud on court, PTR and Waters agreed to participate and to act in accordance with the Alperin's plan, and subsequently acted in concert with Alperin and with each other in furthering such plan.

60.     In furthering the plan of taking the Condo from the Plaintiffs, Alperin prepared documents for transfer of the purported claim from PTR to Waters under the guise of purchase. In doing so, Alperin prepared for Defendants' signing, and induced Defendants to sign, several documents which included knowingly false material statements, including false sworn statements made under oath.

61.     Among such documents was a newly fabricated false lost-note affidavit, this time executed by Troy Robertson on behalf of PTR on May 13, 2020. This new lost-note affidavit falsely stated that PTR was the noteholder of the original promissory note made by Olga Guskova on March 29, 2013, and that the original note was lost or destroyed. Despite the language of the affidavit stating that *"Attached is a copy of the Note"*, nothing was, in fact, attached (Exhibit 10).

62.     In fact, PTR never had in its possession the original notarized promissory note and, therefore, was not a noteholder, and also did not have any knowledge as to if the purported promissory note ever existed.

63.     The new false lost-note affidavit was fabricated by Troy Robertson, on direction and induction and/or in concert with Alperin and Waters, with the express intent to use it in non-judicial and judicial proceedings as evidence of Guskova's purported debt, with a purpose to obtain money and property from Plaintiffs, and actually was submitted to the state court's consideration on or about August 13, 2020.

64.     On May 13, 2020 all Defendants, induced by Alperin and acting in concert with each other, signed a document prepared by Alperin which falsely stated that on March 29, 2013

11

Guskova delivered the Note to Anthony Gargiulo and on March 29, 2013 Guskova personally delivered the Deed of Trust to Alperin. Defendants did not, and could not, have personal knowledge of such occurrences, and Defendants had a notice that such statements were materially false. The documents were willfully fabricated with the express goal to use them in non-judicial and judicial proceedings, and actually were submitted to the court's consideration on or about August 13, 2020.

65. Acting in concert with, and/or under induction of Alperin, and in concert among themselves, in furtherance of the plan to obtain property and monry, Defendants willfully signed such materially false statements, including knowingly false statements made under oath, which, as Alperin and Defendants knew, were materially false. The statements also falsely implied that Defendants had personal knowledge of the facts stated, though Defendants were not, and could not have personal knowledge of such facts and circumstances.

66. The documents were prepared by Alperin, and signed by PTR and Waters with the express intent to use such documents as evidence in non-judicial and judicial proceedings with the purpose to create appearance of a valid claim asserted by Waters against Plaintiffs for the title to the Condo and for the purported debt, and with the goal to obtain money and property from Plaintiffs.

67. These documents containing knowingly false material statements, including knowingly false sworn statements made under oath, were submitted to the state court's consideration by PTR on behalf of Waters on August 13, 2020.

68. On or about May 26, 2020 Alperin made payment of $20,000 to PTR for the alleged purchase of the purported claim to the title to, and interest in, the Condo and of the purported debt.

69.     In June and July of 2020 Waters LLC and Alperin made motions to intervene in the Quiet Title action. Waters LLC moved to intervene on the ground of the purchase of the purported claim, and Alperin moved to intervene in capacity of "foreclosure trustee".

70.     During the state court proceedings on July 23, 2020 in the Quiet Title case, PTR, Waters LLC and Alperin did not disclose to the Court the fact that Alperin was the organizer and registered agent of Waters LLC; and that Alperin was attorney of Waters and that Waters and Alperin were in privity. In response to Court's inquiry of the Alperin's status in relation to the issues involved in the Quiet Title case, Alperin claimed that it acted in capacity of "foreclosure trustee", and that its function in the Quiet Title action would be "very ministerial".

71.     Alperin's internal counsel, and counsel for PTR and Waters LLC made false representation to the Court in the Quiet Title action that Waters LLC and Alperin were independent parties with independent interests in relation to the subject matter of the Quiet Title action.

72.     In fact, Alperin was organizer and attorney of Waters LLC and the registered agent for Waters LLC, and Alperin was in privity with Waters. Both PTR and Waters acted in concert and/or under directions and supervision of Alperin.

73.     Later, in its Petition for Appeal to the Supreme Court of Virginia, Alperin did disclose that Alperin asserted its own interest in deed of trust and the purported promissory note, but did not disclose the true nature of such interest.

74.     During the court proceedings in Quiet Title action Alperin affirmatively stated under oath existence of Alperin's continuing association with Flynn, dated back to March of 2013, in relation to the purported Guskova's debt and the Deed of Trust filed by Flynn in 2013.

75.     On or about January 27, 2021 Waters, acting by counsel in concert and/or under control of Alperin, sent Plaintiffs a letter of demand that Plaintiffs immediately cease "all use" of

words "658 Waters Drive" (Exhibit 11). Waters threatened to sue Plaintiffs for damages and incidental costs if Plaintiffs continue to use the address of their own real estate property.

76.     Such demand was made by Waters with malicious intent to harass, to intimidate, and to injure Plaintiffs' property rights arising from Plaintiffs' ownership of the Condo, and in attempt to restrict Plaintiffs rights to use Waters LLC name in legal proceedings against Waters.

77.     Waters do not have, and have never had, the right to restrict Plaintiffs' use of words "658 Waters Drive".

78.     Waters do not have authority to restrict Plainitffs' use of Waters LLC's business name in the course of any judicial proceedings.

79.     Said Waters' demand was willful, intentional and malicious act committed with intent to obstruct Plaintiffs in exercising their statutory right arising from their ownership of the Condo. Waters sent this threat letter on direction of, and/or in concert with, Alperin (Exhibit 12). Judicial actions threatened by Waters could not be legally taken and were not intended to be taken, and were not actually taken.

80.     Plaintiffs learned for the first time about the fact that Waters and Alperin are parties in privity on or about April 22, 2021 from discovery materials produced in a state action.

## DAMAGES

81.     Plaintiffs sustained damages proximately caused by the described conduct of the Defendants, as follows.

82.     During the time that Guskova was absent from her residence at the Condo, Plaintiffs offered the Condo for rent. The main goal was to ensure that the Condo would be adequately maintained by a tenant, with the rent payments covering mandatory expenses associated with ownership of the Condo, such as taxes and condominium association fees, and to generate profit.

14

83.     To keep proper maintenance and to recoup associated expenses, Plaintiffs rented out the Condo starting in December of 2014.

84.     The tenant of the Property learned about Waters LLC's existence in the summer of 2020. In the eyes of the tenant, Waters LLC's business name implied that Waters LLC had superior right to control the Condo, which caused the tenant to doubt who had the rights to make contract for lease of the Condo. Such doubt multiplied the tenant's concerns which the tenant already had had due to earlier harassment by Patti Robertson of PTR that occurred on or about October 2, 2018.

85.     As a proximate result of such tenant's confusion and harassment caused by Defendants, the tenant terminated the contract for rent of the Condo.

86.     Due to continuing potential tenant's confusion caused by Defendants, Plaintiffs were unable to find another tenant, which fact resulted in loss of the maintenance provided by the tenant, coverage of mandatory expenses associated with maintaining the property, and profits. Moreover, both Plaintiffs sustained additional expenses caused by the necessity to engage in maintenance and repair of the Property.

87.     If not for Defendants' acts, Plaintiffs would have maintained the lease contract, and would have not suffered special damages due to the loss of the lease contract, loss of tenants' maintenance of the Condo and loss of profit.

88.     As a proximate result of Waters' act of intentionally registering the business name which was confusingly similar to the physical location and the address of the Condo, which implied Waters LLC's superior rights to and control of the Condo, Plaintiffs suffered foreseeable damages due to disablement of their property.

89.     Waters' use of the business name, which was confusingly similar to the physical location and the address of the Plaintiffs' real estate property, was willful, intentional and

15

malicious act committed in bad faith with malicious intent to falsely represent that Waters had the title to, and the superior right to control, the Plaintiffs' Property.

90.    As a proximate result of Defendants' conduct Plaintiffs suffered special damages due to termination of the contract for lease of their real estate property.

91.    Plaintiffs sustained foreseeable damages caused by Defendants' continuous willful malicious conduct in furthering Defendants' attempts to collect the non-existing purported debt by instituting unlawful foreclosure proceedings, which attempts caused Plaintiffs to bear expenses reasonably necessary to protect Plaintiffs' rights to and interest in their property. Plaintiffs sustained expenses reasonably necessary to protect their rights against the Defendants' unlawful acts, including costs of litigation. Plaintiff Guskova was compelled to travel from abroad to defend her share of interest in the real estate property from unlawful claims made by Defendants, which caused her monetary losses.

## CAUSES OF ACTION

### COUNT I
### FDCPA Violations
### (Against All Defendants)

92.    Plaintiffs herein incorporate by reference all prior paragraphs as if they were set forth here in full.

93.    Defendants are "debts collectors" as defined by the FDCPA, 15 U.S.C. § 1692a(6) in that they were engaged in collection of the purported debt which they acquired under the notice of default with the purpose to collect.

94.    Each of the Plaintiffs is "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a(3) in that in a hypothetical case of a successful debt collection as alleged in Counterclaim filed in the Quiet Title action, each Plaintiff would be obligated to pay the alleged debt and/or depart Plaintiff's respective share of interest in the real estate property.

95.     Defendants violated 15 U.S.C. §§ 1692e(2)(A), 1692e(10) by making false representation to the state court of the legal status of the debt and Defendant's status of holder of the original purported promissory note.

96.     Defendants violated 15 U.S.C. § 1692f(1) in that they attempted to collect a purported debt together with interest, fee, charges end expenses incidental to the purported principal obligation, all of which were not actually owed.

97.     Defendants violated 15 U.S.C. § 1692f(1) by collecting non-extent debt.

98.     Defendants C. Jeffrey Moore and 658 Waters Drive, LLC violated 15 U.S.C. § 1692f(6) that prohibits any nonjudicial action to effect disablement of the property when there was no defendants' right of immediate possession of the property, in that said Defendants organized, and continuously have been using, a business with the name intentionally confusingly similar with the physical location of the Plaintiffs property, and subsequently demanded that Plaintiffs cease all use of the address of their property, which Defendants' acts were intended to cause, and actually caused, disablement of Plaintiffs' real estate property, as described in Paragraphs 53-58, 75-79, 81-91.

99.     Defendants violated 15 U.S.C. § 1692f generally, which prohibits unfair or unconscionable means to collect or attempt to collect any debt, by manufacturing false evidence of debt, including making a sworn lost-note affidavit containing knowingly false statements, with the express purpose to use such false evidence in the course of debt collection, including in the state court proceedings, and actually submitting such false evidence of debt to the state court's consideration, as described in Paragraphs 32-33, 37-38, 60-67.

100.    Defendants C. Jeffrey Moore and 658 Waters Drive, LLC violated 15 U.S.C. §1692e(5) by threatening to take judicial actions against Plaintiffs for Plaintiffs' use of the

17

address of their real estate property, which judicial actions could not be legally taken and were not intended to be taken, as described in Paragraphs 75-79.

101.    Defendants made such actions willfully, maliciously, in bad faith, and with willful or reckless disregard for the right of Plaintiffs.

102.    Plaintiffs sustained foreseeable monetary damages proximately caused by Defendants' willful malicious acts, as described in Paragraphs 81-91.

103.    Defendants are liable to Plaintiffs for compensatory damages pursuant to 15 U.S.C. § 1692k(a)(1) in the amount of $18,300.00, and for additional damages pursuant to 15 U.S.C. § 1692k(a)(2)(A) to each Plaintiff in the amount of $5,000.00, costs expended in prosecuting this action pursuant to 15 U.S.C. § 1692k(a)(3), and for reasonable attorney fee should Plaintiffs retain attorney(s) for prosecuting this cause.

### COUNT II
### Conspiracy to Commit Extortion
### (Against Defendants PTR Investments, Inc., Troy Robertson and Patti Robertson)

104.    Plaintiffs herein incorporate by reference all prior paragraphs as if they were set forth here in full.

105.    Defendants entered into an agreement with Scott N. Alperin of Alperin Law PLLC to conduct, and did conduct, acts with intent to obtain  from Plaintiffs money and property to which Defendants were not entitled, by threatening injury to Plaintiffs' real estate property, in violation of Va. Code § 18.2-59(i).

106.    In furtherance of said agreement, by the letter dated September 24, 2018 Alperin, with the intent to obtain money and property by extortionate means, demanded from Plaintiffs a payment of non-existing debt under a threat of a foreclosure sale of the Plaintiffs' real estate property, which foreclosure could not be legally conducted.

107. In furtherance of said agreement, Defendant Patti Robertson harassed the tenant of the Condo with the threat of imminent foreclosure, which was a threat of injury to property and character of Plaintiffs made with the intent to obtain from Plaintiffs money and property.

108. At the time of making such demands and threats, the foreclosure proceedings were enjoined by the written Court Order, and Alperin and PTR had actual knowledge of the injunction.

109. After Plaintiffs refused to submit to extortion demands, Alperin and PTR retaliated, and attempted to obtain money and property, by initiating unlawful non-judicial proceedings for foreclosure sale of Plaintiffs property. Alperin published notice of foreclosure sale which injured Plaintiffs' character.

110. The foreclosure proceedings would not be possible without willful participation, and acting in concert, of PTR and Alperin.

111. Defendants conspired to commit, and committed, these acts willfully, maliciously, with the intent to obtain money and property from Plaintiffs by extortionate means. Defendants acted with intent to cause Plaintiffs harm and/or with reckless disregard of Plaintiffs' rights and interests.

112. The Plaintiffs suffered special damages proximately caused by Defendants' concerted attempts to extort money and property.

113. Defendants jointly and severely liable to Plaintiffs for compensatory damages in the amount of $25,000.00, for punitive and exemplary damages in the amount of $120,000.00, and for reasonable attorney fee should Plaintiffs retain attorney(s) for prosecuting this cause.

## COUNT III
### Slander of Title
### (Against all Defendants except Troy Robertson)

114.    Plaintiffs herein incorporate by reference all prior paragraphs as if they were set forth here in full.

115.    Defendant Patricia Robertson tortuously slandered the title to the Plaintiffs' real estate property by communicating to the tenant of the Plaintiffs' property false statements implying that PTR Investments, Inc. had, or would obtain soon, superior title to, and right of possession, of the Plaintiffs' real estate property, as described in Paragraph 42.

116.    Defendants C. Jeffrey Moore, 658 Waters Drive, LLC, acting under control of, or in association with, Scott N. Alperin of Alperin Law PLLC organized business with the name intentionally similar and confusing with the geographical location and the address of Plaintiffs' real estate property, as described in Paragraphs 53-58, 75-79.

117.    Defendants committed these acts with the goal to harass and intimidate Plaintiffs and to obtain, unlawfully, money and property from Plaintiffs. Defendants acted with intent to cause Plaintiffs harm and/or with reckless disregard of Plaintiffs' rights and interests.

118.    Such Defendants acts proximately caused Plaintiffs monetary damages, as described in Paragraphs 81-91.

119.    Defendants jointly and severely liable to Plaintiffs for compensatory damages in the amount of $25,000.00, for punitive and exemplary damages in the amount of $120,000.00, and for reasonable attorney fee should Plaintiffs retain attorney(s) for prosecuting this cause.

## COUNT IV
### Civil RICO Conspiracy
### (Against all Defendants)

120.    Plaintiffs herein incorporate by reference all prior paragraphs as if they were set forth here in full.

20

121.    Defendants conspired to commit RICO violations, and Plaintiffs were injured as proximate result of Defendants' acts.

122.    Defendants conspired, and acted in furtherance of the conspiracy, by acts described in previous Paragraphs, and as further described below.

123.    The Enterprise. Defendants PTR Investments, Inc., Troy Robertson and Patricia Robertson, together with Scott N. Alperin and Alperin Law PLLC, have combined, associated, agreed, mutually undertaken and associated together with the common purpose to collect non-existing debt by extortionate means, and formed "enterprise" as defined by 18 U.S.C. § 1961(4).

124.    Defendant 658 Waters Drive, LLC was organized by Scott N. Alperin and Alperin Law PLLC and is formally operated by Defendant C.Jeffrey Moore, acting in concert and/or under supervision of Alperin, as a tool to effectuate Defendants' and Alperin's pattern of racketeering activity.

125.    Defendants C. Jeffrey Moore and 658 Waters Drive, LLC, together with Scott N. Alperin, Alperin Law PLLC and Defendants PTR Investments, Inc., Troy Robertson and Patricia Robertson have combined, associated, agreed, mutually undertaken and associated together with the common purpose to collect unlawful debt by extortionate means, and conspired for said purpose, in violation of 18 U.S.C. § 1962(d).

126.    Pattern of Racketeering Activity. Defendants' racketeering  activities are continuous in nature, as described in Paragraphs 37-40, 42-43, 52-80.

127.    Defendants' activities include at least two acts of racketeering activity since 2018. Accordingly, Defendants' conduct constitutes a "pattern" of racketeering activity, as defined by 18 U.S.C. § 1961(5).

128.    One such act took place in September and October of 2018 when Alperin and Defendants PTR made extortionate demand of money under the threat to injure Plaintiffs'

property, and subsequently executed the threatened unlawful acts including initiation of unlawful non-judicial foreclosure proceedings as described in Paragraphs 41-43.

129.     Another such act took place on or about May 13, 2020 when Defendants and Alperin, acting in concert, willfully fabricated knowingly false evidence of the purported debt, as described in Paragraphs 60-67.

130.     Other acts of racketeering activity included extrinsic fraud on State Courts, as described in Paragraphs 63, 64, 67, 70-73.

131.     Interstate Commerce. The enterprise described in Paragraphs 123-125 engaged in interstate commerce, as described in Paragraph 34. Defendants activities include interstate commercial transactions which constitute an integral part of the Defendants' racketeering activities in pursuing to the common goal of the Enterprise.

132.     Defendants and Alperin conspired to commit, and actually committed, acts of racketeering activity as defined by 18 U.S.C. § 1961(1)(A), by acting in concert and conspiring to obstruct and/or impede the due administration of justice in the state courts by and through: (a) willful fabrication false and/or misleading evidence and other information, and committing perjury and inducing another to commit perjury in violation of Virginia Va. Code § 18.2-434, Va. Code § 18.2-436 as described in Paragraphs 60-67; (b) disobedience of written decree of the state court and extrinsic fraud on state courts in violation of Va. Code § 18.2-456(5), as described in Paragraphs 63-64, 67, 70-73.

133.     Defendants and Alperin conspired to violate, and actually violated, provisions of 18 U.S.C. § 894, by engagement in collecting the alleged extension of credit by extortionate means, as described in Paragraphs 31-80.

134.    Damages. Plaintiffs sustained monetary damages proximately caused by Defendants' conspiracy to commit racketeering acts, and by Defendants' racketeering activity, as described in Paragraphs 81-91.

135.    Defendants are liable to Plaintiffs for compensatory damages in the amount of $25,000.00, for punitive and exemplary damages in the amount of $350,000.00, and for reasonable attorney fee should Plaintiffs retain attorney(s) for prosecuting this cause.

### COUNT V
### Piercing Veil of the LLC
### (Against Defendant C. Jeffrey Moore)

136.    Plaintiffs herein incorporate by reference all prior paragraphs as if they were set forth here in full.

137.    Defendant 658 Waters Drive, LLC is a single-member limited liability company without capitalization and/or a liability insurance.

138.    Defendant 658 Waters Drive, LLC was organized, and is operating only in the interests of its sole member C. Jeffrey Moore and its organizer and attorney Scott N. Alperin.

139.    Defendant 658 Waters Drive, LLC was organized with the specific purpose to serve as instrumentality in pursuing unlawful goal to extort money and property from Plaintiffs for the benefit of its sole member C. Jeffrey Moore and its organizer and attorney Scott N. Alperin, as described in Paragraphs 53-58.

140.    Defendant  C. Jeffrey Moore is an alter ego of Defendant 658 Waters Drive, LLC in that both persons pursue the same goal to collect non-existing debt from Plaintiffs and to obtain money and property from Plaintiffs, and  658 Waters Drive, LLC does not have any other purpose and does not conduct any other business activity, and Defendant C. Jeffrey Moore and Defendant 658 Waters Drive, LLC operate as one. C. Jeffrey Moore used 658 Waters Drive LLC to evade personal obligation for unlawful acts against Plaintiffs and Plaintiffs' property.

141.   Defendant C. Jeffrey Moore used Defendant 658 Waters Drive, LLC as an instrument to perpetrate extrinsic fraud on court to obtain money and property from Plaintiffs.

142.   If capitalization of Defendant 658 Waters Drive, LLC is insufficient to satisfy in full the judgment that may be awarded to Plaintiffs against Defendant 658 Waters Drive, LLC, it would be unjust not to pierce the veil of the limited liability company 658 Waters Drive, LLC.

143.   Therefore, if judgment is awarded to Plaintiffs against Defendant 658 Waters Drive, LLC, Plaintiffs request that this Court pierce the veil of 658 Waters Drive, LLC and grant satisfaction of such judgment from personal assets of Defendant C. Jeffrey Moore.

### RELIEF SOUGHT

WHEREFORE, Plaintiffs, Tatyana Babakaeva and Olga Guskova, demand judgment against Defendants PTR Investments, Inc., Troy Robertson, Patricia Robertson, 658 Waters Drive, LLC and C. Jeffrey Moore, jointly and severally, as follows:

A. For appropriate compensatory damages in the amount of:

(i)   Eighteen Thousand Three Hundred Dollars ($18,300.00) on Counts I;

(ii)   Twenty Five Thousand Dollars ($25,000.00) on Counts II, III and IV;

B. For appropriate additional damages pursuant to 15 U.S.C. § 1692k(a)(2)(A) in the amount Ten Thousand Dollars ($10,000.00) on Count I;

C. For appropriate punitive and exemplary damages in the amount of:

(i)   One Hundred Twenty Thousand Dollars ($120,000.00) on Counts II and III;

(ii)   Three Hundred Fifty Thousand Dollars ($350,000.00) on Count IV;

D. For costs pursuant to 28 U.S.C. § 1920 and 15 U.S.C. § 1692k(a)(3);

E.   For reasonable attorney fee should Plaintiffs retain attorney(s) for prosecuting this cause; and

F.  For piercing veil of Defendant 658 Waters Drive, LLC.

## CERTIFICATE

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.


*Tatyana Babakaeva*

Tatyana Babakaeva, *pro se*
*Mailing address:*
1 Lynn Drive
Newport News, VA 23606
Phone: (757) 967-7711
e-mail: tatyana.babakaeva@gmail.com

05. 11. 2021

Date of signing


*Olga Guskova*

Olga Guskova, *pro se*
*Mailing address:*
1360 Hafford Road
Virginia Beach, VA 23464
Phone: (757) 389-3303
e-mail: obguskova@gmail.com

05. 10. 2021

Date of signing

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRIGINIA
_Norfolk_   DIVISION

_Tatyana Babakaeva et al._
                                    Plaintiff(s),

                    v.

_PTR Investments, Inc. et al._
                                    Defendant(s).

Civil Action Number: _____

## LOCAL RULE 83.1(M) CERTIFICATION

**I declare under penalty of perjury that:**

**No attorney has prepared, or assisted in the preparation of**_Complaint_.
                                                                    **(Title of Document)**

_Tatyana Babakaeva_
Name of *Pro Se* Party (Print or Type)

_Tatyana Babakaeva_
Signature of *Pro Se* Party

Executed on: _May 11, 2021_   (Date)

**OR**

**The following attorney(s) prepared or assisted me in preparation of** _____.
                                                                        **(Title of Document)**

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document

_____
(Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _____   (Date)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
_Norfolk_ DIVISION

_Tatyana Babakaeva et al._
                        Plaintiff(s),

v.

_PTR Investments, Inc. et al._
                        Defendant(s).

Civil Action Number: _____

## LOCAL RULE 83.1(M) CERTIFICATION

**I declare under penalty of perjury that:**

**No attorney has prepared, or assisted in the preparation of** _Complaint_ .
                                                                (Title of Document)

_Olga Buskova_
Name of _Pro Se_ Party (Print or Type)

_Olga Buskova_
Signature of _Pro Se_ Party

Executed on: _May 11, 2021_ (Date)

**OR**

**The following attorney(s) prepared or assisted me in preparation of** _____.
                                                                        (Title of Document)

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
**Prepared, or assisted in the preparation of, this document**

_____
(Name of _Pro Se_ Party (Print or Type)

_____
Signature of _Pro Se_ Party

**Executed on:** _____ (Date)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

TATYANA BABAKAEVA and )
OLGA GUSKOVA, )
)
Plaintiffs, )
)
v. )
) Civil Action No. _2:21cv 267_
PTR INVESTMENTS, INC, )
TROY ROBERTSON, )
PATRICIA ROBERTSON, )
)
658 WATERS DRIVE, LLC and )
C. JEFFREY MOORE, )
)
Defendants. )

FILED

MAY 13 2021

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

## NAMES AND ADDRESSES OF THE PARTIES

**Plaintiffs**

Plaintiff 1:      Tatyana Babakaeva, *pro se*
Mailing address:
1 Lynn Drive
Newport News, VA 23606
Phone: (757) 967-7711
e-mail: tatyana.babakaeva@gmail.com

*For summons:*
*Tatyana Babakaeva*
*(757) 256-3110*

Plaintiff 2:      Olga Guskova, *pro se*
Mailing address:
1360 Hafford Road
Virginia Beach, VA 23464
Phone: (757) 389-3303
e-mail: obguskova@gmail.com

RECEIVED
2021 MAY 12 P 4:44
CLERK US DISTRICT COURT
NORFOLK VIRGINIA

1

**Defendants**

Defendant 1:      PTR Investments, Inc.
*Registered agent:*
Troy Robertson, R/A
2312 Greenwell Ct
Virginia Beach, VA, 23455
USA

Defendant 2:      Troy Robertson
4605 Pembroke Lake Cir, Ste 101
Virginia Beach, VA 23455
USA

Defendant 3:      Patricia Robertson
4605 Pembroke Lake Cir, Ste 101
Virginia Beach, VA 23455
USA

Defendant 4:      658 Waters Drive, LLC
*Registered agent:*
C. Jeffrey Moore
468 Investors Pl, Ste 102
Virginia Beach, VA 23452
USA

Defendant 5:      C. Jeffrey Moore
468 Investors Pl, Ste 102
Virginia Beach, VA 23452
USA

2