UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | | |
|---|---|---|
| TATYANA BABAKAEVA and | ) | |
| OLGA GUSKOVA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.:  2:21-cv-267 |
| | ) | |
| PTR INVESTMENTS, INC., | ) | |
| TROY ROBERTSON, | ) | |
| PATRICIA ROBERTSON, | ) | |
| 658 WATERS DRIVE, LLC, and | ) | |
| JEFFREY MOORE | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

DEFENDANTS PTR INVESTMENTS, INC., TROY ROBERTSON,
AND PATRICIA ROBERTSON'S MEMORANDUM IN SUPPORT
OF THEIR MOTION TO DISMISS

COMES NOW the Defendants, PTR Investments, Inc. ("PTR"), Troy Robertson ("Troy"),

and Patricia Robertson ("Patti")(collectively, the "Defendants"), by counsel, and respectfully

submits this Memorandum in Support of their Motion to Dismiss Plaintiffs' Complaint.

## I. STANDARD

The Fourth Circuit has held that "a motion to dismiss under Rule 12(b)(6) tests the

sufficiency of a complaint," and does not resolve contests surrounding the facts or merits of a

claim. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.1992).  A claim should be

dismissed "if, after accepting all well-pleaded allegations in the plaintiff's complaint as true . . . it

appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him

to relief." *Hatfill v. The New York Times Co.*, 2004 WL 3023003, at *4 (E.D. Va. 2004). While the

Court must view the facts in the light most favorable to the plaintiff, "it is not bound with respect

to the complaint's legal conclusions." *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991). Moreover, this Court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Markets, Inc. v. J.D. Associates Ltd. Partnership*, 213 F.3d 175, 180 (4th Cir. 2000).

While Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint "must be enough to raise a right to relief above the speculative level" to one that is "plausible on its face." *Id.*

## II. ARGUMENT

The Plaintiffs assert the following claims: Count I: Violation of FDCPA (against all defendants); Count II: Conspiracy to Commit Extortion (against defendants PTR, Troy and Patti); Count III: Slander of Title (against all defendants except Troy); Count IV: Civil RICO Conspiracy (against all defendants); and Count V: Piercing the Corporate Veil (against defendant C. Jeffrey Moore).

### A.   All Counts Against Troy and Patti Should Be Dismissed For Failure to State a Claim for Personal Liability

Piercing the corporate veil is an extreme remedy that courts are usually very reluctant to grant because the "independent legal existence of the corporation is a basic component of corporate law." *O'Hazza v. Executive Credit Corp.*, 246 Va. 111, 114 (1993). While Virginia law permits disregarding the separate legal existence of an entity, "settled precedent cautions courts that piercing of the corporate veil should be permitted 'only when necessary to promote justice' and only under exceptional circumstances," like when the corporate insider has so abused or disregarded the corporate form that the corporation becomes the alter ego of the insider. *Cheatle v. Rudd's Swimming*

*Pool Supply Co., Inc.*, 234 Va. 207, 212 (1987); *see also C.F. Trust, Inc. v. First Flight Ltd. Partnership*, 111 F.Supp.2d 734 (2000). A mere allegation that an individual had control over the corporation or that "the corporate entity was [simply] the alter ego, alias, stooge, or dummy of the individuals sought to be charged personally" is not enough. *Cheatle*, 234 Va. at 212.

The Plaintiffs have no basis to allege personal liability against Troy or Patty. In fact, the Plaintiffs did not even attempt to set forth any statement explaining why they believe Troy or Patti should be held personally liable for any of these claims. The Plaintiffs have simply stated that Troy and Patti are officers of PTR, which is not only insufficient to state a claim for the extraordinary remedy of piercing the corporate veil, but it actually demonstrates that the corporate veil should not be pierced; as admitted by Plaintiffs, Troy and Patti were acting *within* their corporate roles.  Compl. ¶¶ 6–7; *Compare Cheatle*, 234 Va. at 212.

The issue of Troy and Patti's personal liability for each specific count is addressed, to some degree, in the arguments below. Ultimately, though, no facts have been pled to support piercing PTR's corporate veil. In fact, the only actual *claim* made in support of piercing is in regard to another defendant, 658 Waters Drive, LLC. *See* Compl. ¶¶ 136–143. PTR was expressly left out of the piercing claim in Count V so it is unclear why the Plaintiff even included Troy and Patti as parties in this lawsuit.

Because the Plaintiffs' allegations are utterly void of any conceivable basis for holding Troy and Patti, as officers of PTR, personally liable for any of the causes of action stated in the Complaint, every claim against Troy and Patti should be dismissed.

**B.    Count I's Claim for FDCPA Violations Should Be Dismissed Because the Defendants Are Not Debt Collectors and the Claim Is Barred by the Statute of Limitations**

Congress created 15 U.S.C. §1692 to prevent unfair, deceptive, and abusive debt collection practices by debt collectors. *See* 15 U.S.C. §1692(a), (e). An action to enforce any liability created

by the FDCPA is appropriate if brought within one year from the date on which the violation occurs. 15 U.S.C. §1692(k)(d). For purposes of the statute, a "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. §1692a(1)(6). This term includes a "creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." *Id.*

The statute also outlines, specifically, what a "debt collector" is not, and the term "debt collector" does ***not*** include, among other things, "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." 15 U.S.C. §1692a(1)(6)(A). The FDCPA only applies to debt collectors as defined under 15 U.S.C.A. § 1692(a)(6). Based on the definition provided, the FDCPA does not apply to creditors attempting to collect their own debt under their own name or creditors whose principal purpose of business is not to collect debt. *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131,134–135 (4th Cir. 2016).

First and foremost, the Plaintiffs' claim is time barred by the one-year statute of limitations. As pled, PTR, after being assigned rights to the relevant deed of trust and promissory note, initiated a second foreclosure proceeding sometime prior to November 14, 2018. Compl. ¶¶ 43–44. This action was filed on May 13, 2021, about two and a half years after the alleged violation occurred. As a result, this claim cannot proceed and should be dismissed with prejudice.

Second, the Plaintiffs provide that the Defendants are "debt collectors" based on a definition that does not match the FDCPA. Compl. ¶ 93. The Plaintiffs state that the Defendants "were engaged in collection of the purported debt which they acquired under the notice of default

with the purpose to collect." *Id.* The Plaintiffs do not state that the Defendants were a creditor whose "principal purpose" was to collect debts or that the Defendants attempted to collect the debt "using any name other than [their] own." *See Henson*, 817 F.3d at 134–135.

Instead, the Plaintiffs only allege that Scott Alperin, trustee for the estate of Anthony Garguilo, attempted to collect the debt (Compl. ¶¶ 20, 41), that a later substitute trustee for the estate of Anthony Garguilo attempted to collect the debt (Compl. ¶¶ 23, 26), and that PTR attempted to initiate foreclosure proceedings on the debt it owned (Compl. ¶¶ 34–35, 43). None of these allegations support that PTR attempted to collect a debt under another parties' name or that PTR's "principal purpose" as a business was to collect debts. At best, the Plaintiffs' pleadings could be stretched to read that PTR became a creditor when it purchased rights to the at-issue deed of trust and promissory note prior to engaging in the challenged practices, but this is not a violation of the FDCPA. *Compare Henson*, 817 F.3d at 134.

Third, absolutely no basis is pled to support including Troy and Patti, personally, under this claim. Troy and Patti, as officers of PTR, are excluded from the definition of "debt collector," and, accordingly, to the extent the Plaintiffs' pleading could be construed to contend that either of these parties took actions in violation of the FDCPA in any alleged attempts to collect a debt on behalf of PTR, they are not subject to any individual claim for violation(s) of the FDCPA. *See* 15 U.S.C. §1692a(1)(6)(A).

Fourth, to the extent any of the unlawful acts alleged by the Plaintiffs require knowledge, intent, and/or malice, the Complaint does not allege the requisite knowledge, intent, or malice necessary to make "false representations of the legal status of the debt" or that PTR otherwise could have allegedly intended to try and collect on a non-existence debt. *See* Compl. ¶95–97. As pled, Plaintiffs acknowledge that "[n]either Heirs nor PTR had, or possibly could have, personal knowledge of [the false allegations]" contained in paragraph 37 related to delivery of the Note and Deed of Trust. Compl. ¶37. Beyond this, the

Plaintiffs also fail to specifically allege how PTR could have knowledge regarding the validity and/or existence of any of the Note and Deed of Trust, both of which it did not create.

In conclusion, the FDCPA claim is time barred. However, even if it is not time barred, the Plaintiffs failed to allege that PTR or Troy and Patti are "debt collectors" subject to the FDCPA. Additionally, Plaintiffs have blatantly acknowledged that PTR could not have personal knowledge of the alleged wrongful acts related to the Note and Deed of Trust, which Plaintiffs contend invalidated the debt. Consequently, the Plaintiffs have not and cannot state a claim for violation of the FDCPA by the Defendants.

Not only did Plaintiffs fail to provide a proper FDCPA claim, it is clear from the plain language of the statute that the FDCPA does not apply to creditors who attempt to collect their own debt under their own name. 15 U.S.C § 1692a(6). Furthermore, there is an explicit provision stating that "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor" is *excluded* from the definition of "debt collector." 15 U.S.C § 1692a(6)(A)(emphasis added). As a result, bringing this claim against not only PTR but also its officers, with absolutely no basis pled for doing so, was an act of bad faith meant to cause undue financial burden on the Defendants.[1] Based on this, the Defendants ask the Court to award them their reasonable attorney's fees incurred in defending against the Plaintiffs' claims, in accord with 15 U.S.C § 1692(k)(a)(3).

---

[1] Notably, though proceeding as a *pro se* party, Ms. Babakaeva is no stranger to litigation, and the requirements therein, and in fact has argued multiple times before the Eastern District of Virginia in *Babakaeva v. Quadros & Associates, P.C.*, 4:08-cv-00129-RAJ-FBS; *Babakaeva v. Wilson, et al*, 4:09-cv-00058-RAJ-FBS; *Babakaeva v. Quadros et al*, 4:11-cv-00078-RAJ-FBS (all as Plaintiff); and *Jones, Blechman, Woltz & Kelly, P.C. v. Sinkine et al*, 4:08-cv-00123-RAJ-JEB (as Defendant).

### C.  Count II, Conspiracy to Commit Extortion, Should Be Dismissed Because It Is Barred by the Intra-Corporate Immunity Doctrine.

In Virginia, "[a] common law conspiracy consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means." *T.G. Slater & Son, Inc. v. Donald P. and Patricia A. Brennan LLC*, 385 F.3d 836, 845 (4th Cir. 2004). "However, the 'intracorporate immunity doctrine,' which has been adopted by the Virginia Supreme Court and the Fourth Circuit, deems multiple defendants a single entity for the purpose of analyzing a civil conspiracy claim if such defendants are employees or agents of the same entity and are acting *within the scope* of their employment/agency." *Vollette v. Watson*, 937 F. Supp. 2d 706, 727 (E.D. Va., Norfolk Division, 2013) (quoting *Fox v. Deese*, 234 Va. 412, 428 (1987) (emphasis in original)).

As pled in the Complaint, Troy and Patti are officers of PTR, the president and vice president, respectively. Compl. ¶¶ 6–7. Count II is pled only against PTR, Troy, and Patti, and no allegations state that Troy or Patti were acting outside the scope of their roles as officers. *See generally*, Compl. Because the Defendants are considered a single entity due to the intra-corporate immunity doctrine, the Plaintiffs' conspiracy count must fail because the Plaintiffs' Complaint fails to allege the concerted action of *two* or more persons/entities. In *Feeley v. Total Realty Management*, the court granted the defendants' motion to dismiss the plaintiff's conspiracy to commit fraud claim because a bank, as a corporation, could not conspire with its agents. 660 F. Supp. 2d 700 (2009). The Court should dismiss this claim here for the same reason, namely, because the allegation of conspiracy is made against a corporation, PTR, and its agents, Troy and

Patti, who are all considered a single entity and not capable of conspiring together under a civil conspiracy claim.[2]

### D. Count III, Slander of Title, Should Be Dismissed Because the Claim Is Barred by the Statute of Limitations and Further Because the Claim is Insufficiently Pled.

Slander of title has been defined as a "false and malicious statement, oral or written, made in disparagement of a person's title to real or personal property, causing the plaintiff special damages." *Suggs v. M & T Bank*, 230 F. Supp. 3d 458, 465 (E.D. Va. 2017). There is a dearth of caselaw in Virginia outlining the specific elements for slander of title. However, several courts, such as the United States District Court of West Virginia, have stated that to establish all the elements of the claim, by a preponderance of the evidence, the claimant must plead and prove that there was a: (1) publication; (2) false statement in the publication; (3) malice in the publication; (4) ownership interest in the property that is the object of the publication; and (5) special damages by reason of the obligation. *Tucker v. Thomas*, 853 F. Supp. 2d 576 (N.D. W. Va. 2012). This claim has a two-year statute of limitations that begins to accrue on the date when injury is sustained. *Koz v. Wells Fargo Home Mortg.*, 83 Va. Cir. 96 (2011). When negligent or tortious conduct is continuous, the cause of action begins to accrue once the conduct has ceased. *Williams v. Norfolk & W. Ry. Co.,* 530 F. 2d 539, 542 (4th Cir. 1975). This claim should be dismissed for three separate and independent reasons.

*First*, this claim is time-barred because more than two years have passed since the last alleged action and the filing of this action.  In *Koz*, a deed of trust, that was alleged to be wrongfully

---

[2] Aside from the intra-corporate immunity doctrine, which acts a complete bar, the Complaint is also fatally flawed as to this count because it fails to sufficiently allege facts to support the other elements of statutory conspiracy, including a basis from which the Court can "infer a meeting of the minds and not mere parallel conduct as required to maintain a claim for conspiracy." *Feeley*, 660 F. Supp. 2d at 713.  *See* Section E below discussing Plaintiffs' failures to adequately plead the conspiracy component of a RICO claim.

recorded, was the basis for the slander of title claim. 83 Va. Cir. at 6. Though the deed of trust remained recorded in the land records office for a long period of time, the court found that, for accrual purposes, the alleged injury was more properly categorized as a "continued harm from a single tortious act" as opposed to "continued tortious behavior." *Id.* Therefore, the general rule that the statute of limitations attaches at the time of the injury applied, and the clock began to run when the deed of trust was recorded. *Id.* at 6–7.  Similarly, in this case, the alleged injury occurred, and the statute of limitations began to run, in 2013 when the deed of trust was recorded, an act which none of the Defendants actually participated in. Compl. ¶18. PTR did not purchase the debt at issue here until 2018, when the applicable statute of limitations for a slander of title claim had already well passed. Compl. ¶ 34-35. At the absolute latest, some cognizable harm related to slander of title was potentially alleged against Patti on October 2, 2018 when she allegedly made statements to the Plaintiffs' tenants, on behalf of PTR, regarding the property. Compl. ¶ 115. However, even then, more than two years has passed between the October 2018 statement and the filing of the Plaintiffs' complaint.

*Second*, the Plaintiffs have failed to plead the necessary elements of malice and a false statement. *See Suggs* 230 F. Supp. 3d at 465. As pled, the Plaintiffs acknowledge that "[n]either Heirs nor PTR had, or possibly could have, personal knowledge of [the false allegations]" contained in paragraph 37 related to delivery of the Note and Deed of Trust. Compl. ¶37. Beyond this, the Plaintiffs also fail to specifically allege how PTR could have knowledge regarding the validity and/or existence of any of the Note and Deed of Trust, both of which it did not create. Thus, speaking to tenants of a property PTR believed it rightfully owned and had a claim to is not a malicious act.

The Plaintiffs also do not set forth in their complaint any facts to support their position regarding the property and the validity of the Note and Deed of Trust. Nor do they set forth any finding by the Court that PTR knew its claim to the property was wrongful at the time it pursued its claim. In fact, the facts pled show the opposite is true, i.e. that third parties were involved during the time the alleged bad acts took place. *See* Compl. ¶ ¶ 18, 19, 21, 22, 27. Because of this, the Plaintiffs have not and cannot set forth facts to support that the comments made by Patti, on behalf of PTR, to the Defendant, were false when made. Thus, the Plaintiffs have failed to allege malice or the existence of a false statement to support their slander of title claim.

*Third*, there are no allegations that Patti played any role during the initial 2013 purchase time-frame, and there are no allegations that her alleged actions in 2018 were anything other than within her capacity as an officer of PTR.  Therefore, there are no viable claims asserted against Patti in her individual capacity.

For these reasons, the slander of title claim must fail against the Defendants, and the claim should be dismissed, with prejudice, since the statute of limitations has passed.

### E.  Count IV, Civil RICO Conspiracy, Should Be Dismissed for Failure to State a Claim

To plausibly allege a civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must plead conduct of an enterprise through a pattern of predicate acts constituting racketeering activity that caused injury to plaintiff's business or property. *See Sedima, S.R.P.L v. Imrex Co.*, Inc., 473 U.S. 479, 496 (1985).  The Court, however, "must also exercise caution to ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions" and to prevent "treble damage suits [from being] brought against isolated offenders for their harassment and settlement value[.]" *US Airline Pilots Ass'n v. Awappa*, *LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (quoting *Boyle v. United States*, 556 U.S. 938, 944 (2009)).

For the following four separate and independent reasons, each of which is sufficient for purposes of dismissal under Fed. R. Civ. P. 12(b)(6), the Plaintiffs' claim for civil RICO conspiracy should be dismissed.

*First*, the Plaintiffs have not properly pled facts to support the Court's jurisdiction over this claim because they have not sufficiently pled that the alleged enterprise's acts were a part of or impacted interstate commerce. To prevail on a RICO claim, a plaintiff generally must demonstrate that the enterprise was engaged in interstate commerce or that its activities affected interstate commerce. *See* 18 U.S.C. § 1962(a). "A RICO enterprise must engage in, or affect in some significant way, commerce directly involving the United States— e.g., commerce between the United States and a foreign country." *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2105 (2016). "Enterprises whose activities lack that anchor to U.S. commerce cannot sustain a RICO violation." *Id.*

To support this element, the Plaintiffs merely state that, "the enterprise described in 123-125 engaged in interstate commerce, as described in paragraph 34" and "Defendants [sic] activities include interstate commercial transactions." Compl. ¶ 131. Paragraph 34 provides, "[o]n or about August 3, 2018 the purported Guskova's obligation was purchased for PTR for $30,000 from the Heirs, who were residents of Delaware (Rachele Gargiulo) and New York (Lisa Cuomo)." Compl. ¶ 34.

The fact that PTR purchased the debt attached to a Virginia property from third parties, who are not even parties to this Complaint, whom the Plaintiffs allege are residents of other states, is irrelevant. This allegation has nothing to do with the alleged enterprise and its activities in interstate commerce. All activities by the Defendants alleged in this Complaint took place in Virginia related to a Virginia property. *See*, *e.g.*, Compl. ¶¶ 14, 18, 42, 43, 53, 55. Thus, the

Plaintiffs allegations provide insufficient support for their statement that the Defendants engaged in interstate commerce.

**Second**, the Plaintiffs cannot sustain their civil RICO conspiracy claim because they failed to adequately plead the existence of a conspiracy. To plead a violation of § 1962(d), a plaintiff must allege that "each defendant agreed that another coconspirator would commit two or more acts of racketeering." *United States v. Pryba*, 900 F.2d 748, 760 (4th Cir. 1990). In *Pryba*, the court found that to support a conspiracy conviction under § 1962(d), each defendant must agree that he or another would violate § 1962(c). *Id.* In that case, the plaintiffs failed to adequately plead an agreement to the conspiracy on the part of each defendant, and, thus, their RICO claim failed. Similarly, in *Walters v. McMahen*, the court ruled that the plaintiff failed to state a claim for a RICO violation because the plaintiffs presented no more than conclusory allegations to suggest that the defendants formed a conspiracy under 18 U.S.C. § 1962(d). 795 F. Supp.2 d 350, 356 (D. Md. 2011), aff'd, 684 F.3d 435 (4th Cir. 2012). In that case, the plaintiffs failed to provide any facts indicative of an agreement, including when or where the agreement took place, or the specific substance of any communication, which fell below the pleading standard necessary to survive a motion to dismiss, as set forth in *Twombly*. *Id.*

Here, the Plaintiffs' allegations are equally speculative and conjectural. The Plaintiffs have not alleged any facts to indicate when or where any conspiracy took place or the specific substance of any communications. Additionally, there is no allegation that the Defendants, or any other associated parties, each agreed to the conspiracy. Thus, the Plaintiffs' conclusory allegations of a conspiracy fall below the pleading standard necessary to survive a motion to dismiss.

**Third**, the Plaintiffs' claims regarding the existence of an enterprise fall equally flat. A RICO enterprise "includes any individual, partnership, corporation, association, or other legal

entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The enterprise is an "entity separate and apart from the pattern of activity in which it engages." *Boyle*, 556 U.S. at 943-44. The enterprise must contain, at a minimum, three structural components: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *United States v. Pinson*, 860 F.3d 152, 161 (4th Cir. 2017).

In *Nunes v. Fusion GPS*, the plaintiffs pled that the enterprise participants "combined, associated and agreed with Fusion GPS and Simpson to weaponize the media and ethics process against Plaintiff in order to injure Plaintiff in his business as a United States Congressman." 2021 WL 1225983 (E.D. Va., 2021). The court found that the plaintiff failed to sufficiently allege the three structural features necessary to support a RICO enterprise claim. *Id.* Instead, the plaintiff's pleadings merely recited the elements of an enterprise using only conclusory facts, such as the "[t]he persons involved in the enterprise associated for the common purpose of obstructing justice." *Id.* In that case, the allegations in the complaint were best read to allege that the defendants and the other named individuals were engaged in "independent, parallel conduct directed at [the plaintiff]" and did not adequately plead that the Defendants conducted the enterprise's affairs versus its own. *Id.*; *see also Myers v. Lee*, 2010 WL 3745632, at *5 (E.D. Va. Sept. 21, 2010) (when a complaint "alleges only that the RICO persons joined together for the purposes of conducting their own affairs[,]" it does not sufficiently allege a RICO enterprise distinct from Defendants). Further, the six-month period outlined in the complaint was insufficient to sufficiently support longevity or to allow the court to know exactly when the enterprise took shape. *Id.*

Here, the Plaintiffs allegations regarding the existence of an enterprise are similarly conclusive. The Plaintiffs only allegations supporting the existence of an enterprise related to the Defendants is that:

> Defendants . . . together with Scott N. Alperin and Alperin Law PLLC, have combined, associated, agreed, mutually undertaken and associated together with the common purpose to collect non-existing debt by extortionate means, and formed "enterprise" as defined by 18 U.S.C. §1961(4).
> . . .
> Defendants C. Jeffrey Moore and 658 Waters Drive, LLC, together with Scott N. Alperin, Alperin Law PLLC and Defendants . . . have combined, associated, agreed, mutually undertaken and associated together with the common purpose to collect unlawful debt by extortionate means, and conspired for said purpose, in violation of 18 U.S.C. §1962(d).

The Plaintiffs provide no clear articulation of the structural components of an enterprise, namely: 1.) what common purpose did Alperin, C. Jeffrey Moore, 658 Waters Drive, LLC and the other Defendants have in engaging in this enterprise; 2.) what relationship existed among those allegedly associated with the enterprise; and 3.) how was the longevity of the enterprise sufficient to permit the parties to pursue the alleged extortion of "non-existing debt," plus when did the enterprise start between all of these individuals.

It is also not clear from the pleadings how the Defendants were engaged in conducting the alleged enterprise's affairs versus their own affairs.[3] Even if the Plaintiffs could show that the Defendants and other purported enterprise participants engaged in extortion, the Plaintiffs still do not plausibly allege that the Defendants' actions were "coordinated conduct performed on behalf of a distinct enterprise." *See Nunes*, 2021 WL 1225983 at *8. Thus, the Plaintiffs' conclusory

---

[3] Plaintiffs plead in paragraph 52 that PTR acted in concert to pursue its goal to "sue out" from Plaintiffs the condo and money; however, what facts do the Plaintiffs have to support that this was PTR's goal? If anything, the sale by PTR of the note and assignment of the deed of trust to another party shows that its goal was the opposite, i.e. *to get rid of* any claim to the condo and money.

allegations, even when viewed in the light most favorable to the Plaintiffs, do not support the existence of an enterprise under the requirements of Rule 12(b)(6).

**Fourth**, pleading a RICO claim also requires allegations of a pattern of racketeering activity, or at least two or more predicate acts in violation of 18 U.S.C. 1961(1). *H.J. Inc. v. Northwestern Bell Telepohone Co.*, 492 U.S. 229 (1989); *see also* 18 U.S.C. § 1962(a)-(c). To establish a pattern, plaintiffs must identify "a minimum of two predicate acts"—but "two acts alone do not necessarily establish a pattern." *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001).

The Plaintiffs allege that the Defendants participated in the following predicate acts[4], specifically: 1.) that PTR "made extortionate demand of money . . . and subsequently executed . . . unlawful non-judicial foreclosure proceedings"; 2.) "willfully fabricated knowingly false evidence of the purported debt;" and 3.) extrinsic fraud on state courts. Compl. ¶¶ 127–130. The Plaintiffs allege that these predicate acts are prohibited acts of "racketeering activity" under 18 U.S.C. 1961(1). Compl. ¶ 132.

The Plaintiffs offer no support for their allegations that PTR's actions were extortion, obstruction of justice, or any other named predicate act listed under 18 U.S.C. 1961(1). The alleged act from October of 2018 related to statements made by Patti to a third party, so it is unclear how this was extortion of the Plaintiffs. The alleged act that took place on or about May 13, 2020, and the alleged fraud on state courts are fraud claims, which are not included under the definition of "racketeering activity" laid out in 18 U.S.C. §1961(1)(A). *See Al–Abood v. El–Shamari*, 217 F.3d 225, 238 (4th Cir. 2000) (courts are cautious about basing a RICO claim on predicate acts of fraud); *see also Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (1989) (RICO liability is reserved for

---

[4] Plaintiffs technically do not have a heading in their Complaint for their alleged predicate acts. Instead, what the Defendants presume to be the alleged predicate acts are located under "pattern of racketeering activity."

"ongoing unlawful activities whose scope and persistence pose a special threat to social well-being.").

As an initial matter, the Plaintiffs do not plead that Troy or Patti, personally, engaged in at least two predicate acts, and, therefore, have not plead that either of these parties engaged in a "pattern of racketeering activity." For this reason alone, this count must fail against Troy and Patti. While Plaintiff does allege PTR committed at least two predicate acts, these predicate acts are not sufficient to state a RICO violation. The Plaintiff must also allege that these predicate acts established a pattern of "racketeering activity" by PTR that was related and continuous. *See US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 318 (2010).  To show such a pattern, a plaintiff must allege both that the acts are "related" and that they are "continuous." *Id.*  As explained below, Plaintiffs here have failed to allege either.

Related Acts

"Racketeering acts are related if they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Pinson*, 860 F.3d at 161. The Plaintiffs here do not clearly identify how the alleged predicate acts are "related." None of the acts, as pled, appear to have been conducted on behalf of an enterprise (see argument above) and the associated parties or participants are different in Plaintiffs' cited instances. Compl. ¶¶ 128 (actions by Alperin and PTR), 129 (all defendants and Alperin), and 130 (actions in varying combinations by Troy, Alperin, Waters, and/or all defendants). Furthermore, it is not clear how each of the alleged predicate acts would have had a similar purpose or result since PTR sold its interest to Waters, and, as a result, had varying interests.

Continuous Acts

Continuity refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241. Closed-ended continuity may be established by a "series of related predicates extending over a substantial period of time." *Id.* at 242. "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *Id.*

Here, the alleged extortionate acts took place in September and October of 2018, then an alleged fraud took place in May of 2020, and finally the remaining alleged act involved allegedly fraudulent filings with the state court, notably, filings which were a necessary part of an active legal proceeding. Of the events cited, only the events in September and October of 2018 could even plausibly be considered predicate acts under the statute, and, at best, these acts took place over a month's time. In this context, a month is insufficient to establish a "pattern" of unlawful activity. *See*, *e.g.*, Nunes, 2021 WL 1225983 at *7.  Further, there is no continuing threat of a predicate act by PTR because, as noted by the Plaintiffs, summary judgment was entered against PTR in the Plaintiffs' quiet title action, meaning there can be no threat of "future criminal conduct" by PTR.

For all of the reasons stated, the Plaintiffs have failed to adequately support their allegation for a civil RICO conspiracy against the Defendants, especially Troy and Patti for whom no allegations supporting personal liability have been made. First, the Plaintiffs have not properly pled facts to support the Court's jurisdiction over this claim because they have not sufficiently pled that the alleged enterprise's acts were a part of or impacted interstate commerce. Second, the Plaintiffs cannot support their civil RICO conspiracy claim because they failed to adequately plead the existence of a conspiracy. Third, the Plaintiffs' conclusory allegations do not properly support the existence of an enterprise. Fourth, the Plaintiffs do not sufficiently plead a pattern of

racketeering activity, involving the named predicate acts, by the Defendants. Thus, for each of these reasons, which separately act to bar the Plaintiffs' claim, the Plaintiffs' claim for a civil RICO conspiracy should be dismissed.

In conclusion, as a threshold matter, all claims in the Plaintiffs' Complaint against Patti and Troy should be dismissed due to the Plaintiffs utter failure to allege any basis for their personal liability. The Court should also dismiss the Plaintiffs' FDCPA claim because the Defendants are not "debt collectors," and the claim is barred by the statute of limitations. Further, the Plaintiffs' Conspiracy to Commit Extortion claim is barred by the intra-corporate immunity doctrine, as well as their failure to allege the other elements of statutory conspiracy, and the Plaintiffs' Slander of Title claim is barred by the statute of limitations against PTR. Finally, the Plaintiffs' RICO claim should be dismissed for failure to state a claim upon which relief can be granted for four separate and independence reasons, as stated herein. As a result, the Plaintiffs' Complaint should be dismissed in its entirety, with prejudice.

WHEREFORE, in consideration of the foregoing, the Defendants respectfully requests the following relief:

1. An order dismissing Counts I-V of the Plaintiffs' Complaint with prejudice; and

2. An order awarding to Defendants their reasonable attorney's fees in accordance with 15 U.S.C § 1692(k)(a)(3).; and

3. Such other and further relief as this Court may deem just and proper.

Dated: June 9, 2021                                Respectfully submitted,

                                                   PTR INVESTMENTS, INC., TROY
                                                   ROBERTSON, AND PATRICIA
                                                   ROBERTSON

By: /s/ Destinee B. Byers_____
      Of Counsel

Christopher D. Davis, Esq. (VSB No.:
74809)
Destinee B. Byers, Esq. (VSB No.: 94691)
Davis Law, PLC
555 Belaire Ave., Suite 340
Chesapeake, Virginia 23320
Telephone: (757) 410-2293
Facsimile: (757) 257-8614
chris@davislawplc.com
destinee@davislawplc.com
*Counsel for Defendants*