FILED
JUN 29 2021
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

TATYANA BABAKAEVA and )
OLGA GUSKOVA, )
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　Plaintiffs, )
　　　　　　　　　　　　　　　　　)
v. 　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　)   Civil Action No. 2:21-cv-267
PTR INVESTMENTS, INC, )
TROY ROBERTSON, )
PATRICIA ROBERTSON, )
658 WATERS DRIVE, LLC and )
C. JEFFREY MOORE, )
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　Defendants. )

## BABAKAEVA'S MEMORANDUM ON OPPOSITION TO MOTIONS TO DISMISS

Plaintiff, Tatyana Babakaeva, *pro se*, hereby respectfully submits her Memorandum in Opposition to Motion to Dismiss filed jointly by defendants PTR Investments, Inc. ("PTR"), Troy Robertson ("Troy") and Patricia Robertson ("Patti"), (thereafter, collectively "Defendants") on June 9, 2021 (ECF No. 6) seeking dismissal of Complaint (ECF No. 1).

### I. INTRODUCTION

Defendants, in their joint Memorandum in Support of their Motion to Dismiss (ECF No. 7), make arguments based on their misstating and/or ignoring the claims and factual allegations of Complaint; dispute the Complaint's factual allegations by introducing their versions of the facts; ignore or mischaracterize the final orders of the state court attached in exhibits to Complaint; rely on "bad" legal authorities[1]; cite to and quote legal authorities which do not support, and actually invalidate, the Defendants' argument[2]; misrepresent and misquote legal

---

[1] For example, in section "Standard" of Defendants' Memorandum they cite to, and quote from, unpublished opinion of the Circuit Court *Hatfill v. The New York Times Co.*, 2004 WL 3023003 which was reversed by published opinion *Hatfill v. New York Times Co.*, 416 F.3d 320 (4th Cir. 2005).

[2] For example, as will be shown below, Defendants argue against the Plaintiffs' jurisdictional

1

authority[3]. Moreover, some arguments raised by Defendants have no relevance to this action[4].

This Memorandum demonstrates that the factual allegations in the Complaint sufficiently and properly state the claims for relief under all the four Counts against the three Defendants.

## II. STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012).

When reviewing a motion to dismiss, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999).

When rendering its decision, the court may also consider facts derived from sources beyond the four corners of the complaint, including documents attached to the complaint, documents attached to the motion to dismiss "so long as they are integral to the complaint and authentic," and facts subject to judicial notice under Federal Rule of Evidence 201. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Blankenship v. Manchin*, 471 F.3d 523, 526 n. 1 (4th Cir. 2006)); see also *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011).

---

statement based on interstate commerce. Defendants cite to and quote from the case which provides opinion about applicability of RICO to a specific case of international commerce and does not provide any guidance as to the interstate commerce which is relevant to this action.
[3] As will be shown below, Defendants misrepresent *Tucker v. Thomas*, 853 F. Supp. 2d 576 (N.D.W. Va. 2012) by misquoting and truncating a pertinent part of the opinion material to the Defendants' argument.
[4] For example, Defendants argue in length against piercing veil of PTR, while such claim is not in Complaint.

## III. ARGUMENT

### A. Complaint properly states claims for personal liability of Troy and Patti Robertson

Defendants argue, in essence, that acts of corporation, PTR, should not be imputed to individual defendants who are officers/directors. This Defendants' argument uses interpretation of Complaint which is precisely in reverse to what Complaint in fact alleges. Complaint describes certain unlawful acts committed by defendants Troy and Patti, and imputes those acts to defendant PTR. Nowhere Complaint states that PTR's acts were a result of conduct of any person, acting on behalf of PTR, other than Troy and/or Patti. Therefore, all acts attributed to PTR are actually the acts committed by Troy and Patti and imputed to PTR. There is no legal ground to argue that individuals are not liable for their own wrongdoings merely because they are officers/directors of a corporation.

For example, Complaint states (Compl. ¶¶ 37, 60, 61, 63), and relies on the attached exhibit (Compl., Exh. 10), that Troy actively participated in fabrication of falsified evidence of the alleged debt, including by making affidavit containing knowingly false sworn statement of material facts, and that such evidence was fabricated on behalf of the corporation[5]. There is no reason why Troy should not be personally liable for the damages proximately caused to Plaintiffs by Troy's knowingly making such false affidavit. Similarly, Complaint contains allegation (Compl. ¶ 64) that on May 13, 2020 Defendants, including Troy and Patti, willfully and knowingly signed materially false statements with the express intent to use those statements as evidence of the debt which they were attempting to collect on behalf of Waters. Again, there is no reason why Troy and Patti should not be personally liable for the damages proximately caused to Plaintiffs by Defendants' making such false statements in the fabricated evidence.

Therefore, the argument made by Defendants that Troy and Patti are not personally liable

---

[5] Though affidavit expressly states that "PTR ... personally appeared before [notary public]", affidavit was sworn and executed by natural person, Troy Robertson, in his capacity of the director and president of the corporation.

3

for their own malfeasance is without merit.

### B. Complaint Properly and Sufficiently Pleads Defendants' FDCPA Violations

Defendants argue that the FDCPA claim asserted against Defendants is barred by the statute of limitations, that Defendants are not debt collectors under 15 U.S.C. 1692a(6), that Troy and Patti should be excluded from the definition of "debt collectors", and that Complaint does not sufficiently allege malice or a similar state of mind.

All these arguments are without merit.

#### 1. The FDCPA violations are not barred by statute of limitations

The statute of limitations for FDCPA claim runs for each violation, *Bender v. Elmore & Throop, PC*, 963 F. 3d 403 (4th Cir.2020). Complaint in this case alleges acts of FDCPA violations committed by Defendants on or after May 13, 2020, which is within one year of the date of filing of Complaint. On May 13, 2020 all three Defendants signed materially false statements which were intended to be used as evidence of debt in attempt of debt collection that was claimed to be transferred to another person, 658 Waters Drive, LLC ("Waters") (Compl. ¶¶ 66, 68). Subsequently, those fabricated documents were submitted by Defendants to the court's consideration for the purpose of debt collection on behalf of Waters on August 13, 2020 (Compl. ¶ 67). Also, on October 28, 2020 PTR argued in the Court on behalf of Waters in connection with the debt collection attempt against imposition of injunction which would preclude any further debt collection attempts (Compl. Exh. 1).

All such occurrences are within one year of the filing of Complaint and therefore are not time barred.

#### 2. Defendants are debt collectors

Defendants argue that they are subject to the exclusion[6] which relieves from FDCPA

---

[6] The case cited by Defendants followed by decision *Henson v. Santander Consumer USA Inc.*, 582 U.S. __ (2017), which is the proper legal authority in regard to that case.

4

liability those <u>creditors</u> who attempt to collect debt owned by and due to them. This exclusion, however, is not applicable to Defendants for three following reasons.

First, SCOTUS decision in *Henson* is specifically limited to the creditors who are "owed" debt, including those creditors who obtained debt that had been in default[7]. Complaint alleges, and includes the exhibit that conclusively established the fact, that Defendants were not "owed" the debt, as the debt they attempted to collect did not ever exist (Compl. Exh. 1). In other words, PTR was not a "creditor".

Second, in recent post-*Henson* decisions several Circuits recognized the narrow scope of *Henson*. For example, in *Reygadas v. DNF Assocs., LLC*, No. 19-3167, 2020 U.S. App. LEXIS 38989 (8th Cir. Dec. 14, 2020) the Circuit Court observed that *Henson* exception is applicable only to *passive* buyers of the defaulted debt, and not to those buyers who are *actively* attempting to collect debt. In this case, Defendants were engaged in *active* attempts of debt collection: they initiated foreclosure in contempt of the injunction (Compl. Exh. 3), and subsequently filed counterclaim against Plaintiffs in the state action in furthering their attempt of debt collection (Compl. ¶ 49).

Third, Defendants claimed that they were <u>not</u> owed the debt at any time on and after May 13, 2020. Indeed, the debt was asserted to be owed to Waters and Alperin Law PLLC (Compl. ¶¶ 60, 61, 66). That means that even if the debt had existed, PTR would not have qualified as "creditor" on or after May 13, 2020. All debt collection attempts made by Defendants on or after May 13, 2020 were for the purported benefit, and on behalf, of Waters and Alperin.

For example, the false affidavit (Compl. Exh. 10) sworned by Troy at the time of the purported transfer of the debt expressly states the purpose for which the affidavit was fabricated:

> "This Affidavit is made to enable the holder of the Note to collect, enforce, or assign the Note and to enable the trustee of substitute trustees under the Deed of

---

[7] *In Henson,* SCOTUS specifically considered debt which "<u>was owed</u>" to the purchaser of the defaulted debt and <u>did not</u> apply its opinion to debt "<u>asserted to be owed or due</u>".

5

Trust to exercise the power of sale contained in the Deed of Trust, file an accounting with the Commissioner of Accounts, and take any other steps necessary to enforce the Deed of Trust."

The false affidavit was fabricated on May 13, 2020 as a part of the transaction of transferring the purported "Note" and assigning of "the Deed of Trust" from Troy, Patti and PTR to Waters and Moore "to enable [Waters] to collect, enforce, or assign the Note and to enable [Alperin] ... to exercise power of sale [of the Plaintiffs real estate property]". Fabricating such affidavit cannot be qualified other than an indirect attempt of Troy and PTR to collect the debt "asserted to be owed or due" to Waters and not to PTR. Similarly, other documents executed the same day by Troy and Patti on behalf of PTR containing materially false statements were fabricated with the intent to use them as false evidence of the non-existing debt asserted to be owed and due to Waters (Compl. ¶ 64).

On October 28, 2020 PTR argued in the Court against imposition of injunction, which argument was made on behalf, and for the benefit, of Waters, and thus constituted indirect attempt to collect debt asserted to be owed or due to Waters, which defines PTR to be debt collector under 15 U.S.C. §1692a(6).

Clearly, for the foregoing reasons, *Henson* exception is not applicable to Defendants on and after May 13, 2020 and, accordingly, does not relieve them from liability for FDCPA violations committed by them on or after that date[8].

Accordingly, all three Defendants are debt collectors as defined by FDCPA under 15 U.S.C. §1692a(6) and are liable for the FDCPA violations.

### 3. Troy and Patti are NOT excluded from liability and are subject of individual claim for FDCPA violations committed by them personally

While there is a split of decisions among circuits whether officers or directors of a debt

---

[8] Defendants raise a straw-man argument by claiming that the Defendants' FDCPA violation occurred in 2018 and therefore are barred by statute of limitations. Complaint does, however, state a claim based on Defendants violations of the FDCPA that occurred on or after May 13, 2020.

6

collector company may be personally liable, without piercing corporate veil, for FDCPA violations committed by the company, there is no disagreement regarding individual liability of company's officers or directors for the FDCPA violation committed by those officers or directors personally. See, e.g., *Kistner v. the Law Offices of Michael*, 518 F.3d 433 (6th Cir. 2008) (holding that a member of LLC is individually liable for FDCPA violation of the LLC without piercing LLC veil because he was personally involved in the abusive debt collection practice). In this case, Patti and Troy on May 13, 2020 personally signed the documents constituting fabricated false evidence of the non-existing debt (Compl. ¶ 64), therefore they are personally liable for their respective FDCPA violations.

### 4. Showing of malice is not required for court's finding of FDCPA violations

Defendants' argument that FDCPA claim should be dismissed for failure to state Defendants' malice and/or their knowledge that their conduct was in violation of FDCPA, or otherwise unlawful, is misplaced. Plaintiffs are not required to demonstrate that FDCPA violations were willful or malicious, as congress did not confine FDCPA liability to "willful" violations. *Jerman v. Carlisle,* 559 U.S. 573 (2010).

### C. Complaint Properly Sets Forth a Claim of Conspiracy to Commit Extortion

Defendants seek dismissal of conspiracy claim on the ground of intra-corporate immunity. Complaint, however, sets forth the claim for "extra-corporate" conspiracy.

Complaint states that *"Defendants entered into an agreement with Scott N. Alperin of Alperin Law PLLC to conduct ... acts with intent to obtain from Plaintiffs money and property to which Defendants were not entitled."* (Compl. ¶ 105). Subsequently, Defendants and Alperin initiated unlawful foreclosure proceedings, which "would not be possible without willful participation, and acting in concert, of PTR and Alperin," (Compl. ¶ 110). The extortion conspiracy claim <u>is not</u> based on an allegation of conspiracy of Troy and Patti with PTR, as

Defendants attempt to present.

Defendants' argument regarding Count II is based on ignoring the key statements of the claim. The plain reading of Complaint shows that the "extra-corporate" conspiracy is properly stated.

All elements of conspiracy to commit extortion are well pled in Complaint.

### D. Slander of Title Claim is Sufficiently Pled

Defendants, in essence, argue that the slander of title claim is barred by statute of limitations and that Complaint insufficiently pleads Defendants' knowledge of the falsity of the slanderous statement and/or Defendants malice. These Defendants' arguments are invalid for the following reasons.

#### 1. The slander of title cause of action is within the allowed time period of statute of limitations

The case cited by Defendants, *Koz v Wells Fargo Home Mortg.*, 83 Va. Cir. 96 (2011) provides that the slander of title claim, when the slanderous act caused economical injury to the property, is controlled by Va Code 8.01-243(B) which establishes five-year statute of limitation after the time of action accrues. In *Koz*, the court held that "for the purposes of this statute, the appropriate test is whether the injury flowed from conduct directed at the property, rather than conduct directed at the person (citing *Willard v. Moneta Bldg. Supply*, 262 Va. 473, 480, 551 S.E.2d 596, 599 (2001); *Keepe v. Shell Oil Co.*, 220 Va. 587, 593-94, 260 S.E.2d 722, 726 (1979) ). Unlike the circumstances of *Koz*, in this action Defendants' slanderous acts and the injury were directed at Plaintiffs' property, and the economical injury caused by defendants Patti and PTR acts committed on and after October 2, 2018 (Compl. ¶¶ 42, 43) was due to disablement of the property (Compl. ¶¶ 84-88). All slanderous acts complained about fall within five-year period preceding filing of this claim, and therefore slander of title cause of action is not time barred.

Further, "the cause of action begins to accrue once the conduct has ceased", as Defendants' Memorandum correctly states. That occurred on January 15, 2021 when Defendants' claim of quiet title to the Plaintiffs' property was terminated by the final court order (Compl. Exh. 1). Even if limitation for claim of slander of title were two years, the claim is still not time barred.

2. Complaint sufficiently pleads falsity of the slanderous statement, Defendants' knowledge of the falsity of the slanderous statement and Defendants' malice

Defendants argue that Complaint does not provide support for allegations of falsity of the slanderous statement, Defendants' malice and/or their knowledge of falsity of the slanderous statement because, as Defendants claim, "Plaintiffs failed to specifically allege how PTR could have knowledge regarding the validity and/or existence of any of the Note and Deed of Trust …"[9]. Such Defendants' argument is in excess of the requirements of Fed.R.Civ.P. 9(b) which provides, in pertinent part: *"Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."*

Complaint satisfies, and exceeds, this pleading standard regarding Defendants' knowledge of the falsity of the slanderous statement by allegations that Defendants had actual knowledge that the statement of an imminent foreclosure on the Plaintiffs' property were not true (Compl. ¶¶ 38, 39).

The falsity of the slanderous statement is sufficiently demonstrated by Complaint's Exhibits 1 which shows that the falsity of the slanderous statement has been conclusively established by the state court.

The fact that publication of the slanderous statements by Defendants was made with

---

[9] The statement made in Complaint that Patti and Troy could not possibly have knowledge of the circumstances and facts to which they falsely attested demonstrates that their willful signing of such statements was not a merely subjective error in judgment as to whether the stated facts were true or false, but a deliberate attempt to mislead.

9

malice[10] is set forth by allegations that such statements were made with knowledge that they were false, and with willful intent to injure Plaintiffs' property (Compl. ¶¶ 38, 105, 111), and by threatening to cause further injury to the property by actions which were unlawful and in contempt of the standing written order of the court of competent jurisdiction (Compl. ¶¶ 39, 42, 43, 108; Exh. 3, 8, 6).

### 3. Defendants' argument materially misrepresents the legal authority on which Defendants rely

Defendants present the elements of the slander of title claim by purportedly quoting from *Tucker v. Thomas*, 853 F. Supp. 2d 576 (N.D.W. Va. 2012):

> " to establish elements of the claim [of slander of title], ... claimants must plead and prove that: ... 5) <u>special damages by reason of obligation</u>".

Such standard, if actually established, would have no sense: commonly, there would be no <u>*"obligation"*</u> in slander of title act to which special damage may be attributed. Indeed, the legal authority purportedly quoted by Defendants does not, in fact, state such legal standard and does not contain such language. Actually, *Tucker* provides, in footnote 10, the following elements of the claim:

> *"To prove a claim of slander of title the plaintiff must establish the following elements: "(1) publication of; (2) a false statement; (3) derogatory to plaintiff's title; (4) with malice; (5) causing special damages; and (6) as a result of diminished value in the eyes of third parties." (Citing TXO Production Corp. v. Alliance Resources Corp., 187 W.Va. 457, 419 S.E.2d 870, 879 (1992).", Tucker at 592.*

Defendants' argument based on misrepresented and truncated quotation of legal authority is improper and should be disregarded by the Court.

### 4. Complaint sufficiently pleads factual allegations supporting all elements of the claim of slander of title

Complaint sets forth <u>the facts</u> of publication (Compl. ¶¶ 42, 43) of false statement

---

[10] "Malice" in this case should be interpreted as "actual malice", meaning, in relation to the slanderous statement, that "the defendant either knew the statement was false or recklessly disregarded whether or not it was true." *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).

(Compl. Exh. 1, 8) derogatory to Plaintiffs' title (Compl. ¶ 42) made with malice (Compl. ¶¶ 38, 39), which statement caused special damages (Compl. ¶ 118) as a result of diminishing value of Plaintiffs' property in the eyes of the tenant (Compl. ¶ 84).

Therefore, Complaint sufficiently states the facts supporting all necessary elements of the claim, which facts Plaintiffs will prove at trial.

### E. Complaint sufficiently states RICO conspiracy claim

#### 1. Complaint states sufficient factual ground showing Defendants' engagement in interstate commerce.

Interstate commerce is defined by 18 U.S.C. § 10:

> "The term 'interstate commerce', as used in this title, includes commerce between one State, Territory, Possession, or the District of Columbia and another State, Territory, Possession, or the District of Columbia."

Law dictionaries define the term "interstate commerce" as follows: "The buying, selling, or moving of products, services, or <u>money</u> across state borders *[emphasis added]*", see, e.g., *https://www.law.cornell.edu/wex/interstate_commerce*.

The statement that Defendants were engaged in interstate commerce is supported by allegation that Defendants moved money across state borders in exchange of the fabricated evidence of the purported debt, which documents were moved across state borders (Compl. ¶ 34; Exh. 4).

Defendants argue that the fact of such interstate transaction is irrelevant to the alleged RICO violations which "all occurred in this state". This Defendants' argument is also without merit.[11].

---

[11] Defendants entertain an argument that a purported debt is not subject to interstate commerce even if traded interstate because it is secured by real estate. Such argument is clearly invalid, as a debt itself does not have a place of domestication whether it is secured or not. Also, Defendants cite to and quote from legal authority *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 195 L. Ed. 2d 476 (2016) which does not provide any support for Defendants' argument. *Nabisco* deals with the claim that a company engaged in international commerce committed RICO violations oversees, and the court observed that such violations are not within the scope of RICO as they do not have anchor to the USA. In this case, all acts stated

The fact of Defendants' making payment interstate for acquiring knowingly false evidence of the non-existing debt is, by itself, an act which is a part of the pattern of racketeering activity.

Regarding relevancy of such transaction to the alleged scheme of racketeering activity, there is a straightforward test for the relevancy: if such interstate transaction had not occurred, Defendants would not have been in possession of the papers which falsely purported existence of the debt, and thus the execution of the scheme to extort property and money from Plaintiffs would not have had any substance. For that reason Complaint alleges (Compl. ¶ 131) that the interstate transaction is "an integral part of the Defendants' racketeering activities in pursuing the common goal of Enterprise".

Accordingly, Complaint properly states the fact of Defendants' engagement in interstate commerce in relation to the transaction which is material to the RICO conspiracy claim.

2. Complaint sufficiently defines conspiracy

Defendants assert argument that Complaint does not provide sufficient details of conspiracy agreement. Defendants simply copy-paste a portion of an opinion from *U.S. v. Pryba*, 900 F.2d 748 (4th Cir. 1990), including language specific for the facts of the cited case, while completely ignoring or misstating allegations of Complaint filed in this action. Particularly, Defendants argue that "plaintiffs failed to provide any facts indicative of an agreement, including when or where the agreement took place, or the specific substance of any communication." This Defendants' argument is misplaced.[12]

---

in Complaint occurred in the USA, so they do not fall under the exclusion for the reach of RICO established by *Nabisco*.

[12] Stating existence of an agreement does not require, in contrast to Defendants' argument, allegations of a secret meeting or a exchange of specific secret messages among the co-conspirators. It is sufficient to show that a co-conspirator "by his words or by his actions, must have objectively manifested an agreement to participate, directly or indirectly, in the affairs of an enterprise". *United States v. Elliot*, 571 F.2d 880, 903 (5th Cir.)

Complaint, in fact, states all requisite facts establishing conspiracy. Paragraph 122 of Complaint states: "*Defendants conspired, and acted in furtherance of the conspiracy, by acts described in previous Paragraphs, and as further described below*." Such previous Paragraphs include, for example, Compl. ¶¶ 9, 12, 40, 43, 59 which specifically state what the subject of the agreement was, with further references to the more detailed description of the scheme in which Defendants agreed to participate directly. For example, Complaint states that all Defendants (including Troy, Patti and PTR) knew that the Alperin's scheme was unlawful but agreed to participate, and actually committed acts toward the goal of Enterprise (Compl. ¶¶ 39, 40, 42, 43). These factual allegations fully satisfy the pleading requirements for stating the fact of agreement.

### 3. Complaint provides sufficient factual basis for the existence of Enterprise

Defendants further claim that "the enterprise must contain, at a minimum, three structural components: a purpose, relationships.... and longevity sufficient to permit these associates to pursue the enterprise's purpose", and that Complaint does not state these elements. This Defendants' claim is based on ignoring the language of Complaint.

Actually, all structural components of the enterprise are clearly stated in Complaint.

a) <u>Common purpose.</u> Common purpose of Alperin, Troy, Patti, PTR, C.Jeffrey Moore and Waters was to obtain from Plaintiffs property and money to which none of them were entitled (Compl. ¶¶ 40, 52, 55, 56, 64, 66, 117, 131, 139, 140).

b) <u>The relashionships described in sufficient detail.</u> Alperin was "operator" of the illegal scheme to achieve the goal stated in (1) which he could not have attempted to achieve without other actors who would undertake the role of "noteholder" and "assignee of the deed of trust" in foreclosure proceedings (Compl. ¶¶ 26, 31-32). For that purpose Alperin induced Troy, Patti and PTR to participate in the scheme (Compl. ¶ 37). Knowing that the scheme involved use of false evidence of debt and that foreclosure was enjoined by the court, Troy, Patti and PTR

13

nevertheless agreed to participate in Alperin's scheme in said role (Compl. ¶ 38). In furtherance of the scheme, Alperin prepared false evidence of the purported debt, and Troy, Patti and PTR purchased such documents interstate (Compl. ¶ 34). Alperin, Troy, Patti and PTR came into agreement to institute unlawful foreclosure proceedings, in which Troy, Patti and PTR played role of "noteholders" and "assignee of deed of trust", while Alperin impersonated "foreclosure trustee" (Compl. ¶¶ 35, 36, 38-40, 43). When the adverse summary judgment against PTR was imminent, Troy, Patti and PTR sought Alperin's help (Compl. ¶ 52). To continue operating the scheme, Alperin organized Waters in agreement with Troy, Patti, PTR, Moore and Waters (Compl. ¶ 53; Exh. 9). Alperin prepared for signing by Troy and Patti on behalf of PTR, and by Moore on behalf of Waters, papers containing materially false statements which Troy and Patti agreed to sign, knowing that the statements were not true and that the documents were intended to be used as false evidence in debt collection action. Alperin coordinated and supervised acts of Troy, Patti, PTR and represented and directed Moore and Waters in relation to the scheme (Compl. ¶ 55; Exh. 12).

    c) <u>Fact stated in Complaint establish sufficient longevity of Enterprise.</u> The racketeering scheme originated on or about May 6, 2013 when Flynn made unauthorized state court filing of a forged deed of trust which encumbered certain real estate property as a security for non-existing debt (Compl. ¶ 18). The deed of trust purported to assign as trustee Scott N. Alperin, who was Flynn's business partner at the time and with whom Scott N. Alperin and his law firm, Alperin Law PLLC, maintained subsequent continuous association (Compl. ¶ 74). Enterprise comprising Alperin, Troy, Patti and PTR began operating in August of 2018, when documents constituting false evidence of debt were fabricated by Alperin, were signed by third-parties under oath in New York and Delaware, and then were acquired by Troy, Patti and PTR interstate in exchange of money that was moved interstate (Compl. ¶¶ 32-34). On or about March 2, 2020 Alperin,

14

Troy, Patti and PTR came into agreement with Moore and Waters to continue pursuing the goal of Enterprise by creating a sham company (Compl. ¶¶ 52-53, 58-59), fabricating additional false evidence of the non-existing debt, which Troy, Patti and PTR signed, including knowingly false statements sworn under oath on May 13, 2020 (Compl. ¶¶ 60-67). Defendants subsequently acted in furtherance of the goal of Enterprise in July, August and October of 2020, and on January 15, 2021 (Compl. ¶¶ 63, 64, 69, 70; Exh. 1).

4. Complaint sufficiently describes the pattern of racketeering activity

Complaint states "at least two acts of racketeering activity" commissioned by Enterprise, and states additional acts of continuing racketeering activity all of which are related by the common goal. Such facts establish a pattern of racketeering activity in which Defendants conspired to engage.

a) Complaint sufficiently states attempts of extortion. Complaint states that Alperin and PTR were acting in concert to obtain property and money from Plaintiffs by threat of unlawful non-judicial proceedings, and then instituting unlawful non-judicial proceeding. This act was committed during August – September of 2018. Subsequently, in March, May, July, October of 2020 and January 2021 Defendants, in agreement with Alperin, Moore and Waters, acted "to enable [Waters] to collect, enforce, or assign the Note and to enable [Alperin] … to exercise power of sale [of Plaintiffs' real estate property]", which was done in furtherance of the scheme to extort property and money from Plaintiffs.

b) Complaint states the facts demonstrating Enterprise's commission of obstruction of justice. Defendants claim that the allegation of the "subsequent" Defendants' conduct were allegation of "fraud" which is not a racketeering activity. By this argument Defendants misstate and mischaracterize the allegations of extrinsic fraud on court (Compl. ¶¶ 70-73), stating that "fraud on State Court" falls under definition of "fraud". This Defendants' argument is wrong.

15

Complaint states the facts that Alperin, PTR and Waters engaged in <u>extrinsic fraud on court</u>, which is not the same as "fraud"[13]. Complaint sets forth the claim that on or about March 2, 2020 Alperin organized a sham company, Waters, which did not have any purpose and/or business other than pursuing the main goal of Enterprise, which is to obtain property and money from Plaintiffs by using false evidence of the non-existing debt as instrument of extortion. Alperin made payment to PTR to "acquire the debt" (Compl. ¶ 68) while acting as an coordinator and supervisor of all five defendants (Troy, Patti, PTR, Moore and Waters).

On May 13, 2020 Defendants fabricated false evidence of the non-existing debt, and subsequently submitted this evidence to the court's consideration on behalf of co-conspirator Waters.

Three attorneys representing Alperin, PTR and Waters knew about such circumstances, but materially misrepresented to the state court the actual status of their clients and their relationship, nature of Alperin's interest in the subject matter of the state action, and therefore prevented the state court from assessing the substance of the controversy. Such misrepresentation, together with intentional use of willfully fabricated false evidence, constitute extrinsic fraud both on a state trial court and on the state highest court (Compl. ¶ 73), which is a crime against administration of justice, and not a "fraud" as Defendants attempt to present.

Enterprise's unlawful scheme substantially was based on exploiting of the forged public record created by Flynn on May 6, 2013. Subsequently, Defendants, in furtherance of the goal of Enterprise, willfully fabricated documents containing knowingly false material statements which were submitted by Alperin to the clerk of the state court for filing among the court's land records (Compl. ¶¶ 26, 35, 43; Exh. 6). By such acts, Defendants willfully and knowingly participated in

---

[13] Defendants confuse two unrelated legal concepts, which have common word "fraud" in their names. <u>Fraud</u> is intentional deception to secure unfair or unlawful gain, or to deprive a victim of a legal right. <u>Extrinsic fraud on court</u> is fraud on court that induces one not to present a case in court or deprives one of the opportunity to be heard. Extrinsic fraud is distinguished from "intrinsic fraud on court," which is the fraud that is the subject of a lawsuit.

forging of public records with unlawful purpose to use such forged records for collection of the non-exiting debt by extortionate means.

Alperin and Moore, with agreement and assistance of Defendants, forged public records by registering with the State Corporation Commission a shell company, 658 Waters Drive, LLC, which company was not intended to engage in any lawful business but had an express purpose to serve as instrument in attempt of collection of non-existing debt by extortionate means (Compl. ¶¶ 53-56; Exh. 9).

  c) <u>Complaint shows the predicate acts of racketeering activity are related.</u> All acts of defendants' racketeering activity are related by the common goal: to obtain real estate property and money from Plaintiffs by extortionate means using fabricated false evidence of the non-existing debt (Compl. ¶ 123, 125).

  d) <u>Complaint shows that the predicate acts of racketeering activity are not "parallel activity".</u> Defendants copy-and-paste language from several court opinions to make up an argument that the acts committed by the co-conspirators are "parallel activity", without referring to any Complaint's paragraphs which purportedly allege such acts[14]. This Defendants' claim is untenable: the scheme of extortion is essentially based on the threat, and an actual attempt, of foreclosure which incorporated coordinated actions of the purported "noteholder", who also impersonated assignee of the forged deed of trust, on one side, and the purported "foreclosure trustee" on the other. Further, starting in March 2020, all defendants and Alperin were acting in furthering the scheme by organizing a sham company Waters, and subsequently by fabricating and transferring to Waters false evidence of the non-existing debt. The action was coordinated and orchestrated, and does not bear any indication of "parallel activity". Clearly, Defendants did not attempt to collect the same non-existing debt concurrently and independently.

---

[14] Such Defendants' statement is an example of a "conclusory" statement made without any factual support.

### 5. Troy and Patti are individually liable for RICO conspiracy

Defendants argue that Troy and Patti, individually, did not commit two or more acts that fall within the racketeering activity and that therefore Troy and Patti are not subject to the RICO conspiracy. Defendants are wrong.

Under *Salinas v. United States,* 522 U.S. 52, 118 S. Ct. 469 (1997), it is not necessary that the substantive violation actually be consummated for the conspiracy violation to be complete. It is sufficient that the defendant has agreed to further an endeavor which, if consummated, would satisfy all elements of a RICO offense. RICO's conspiracy provision "does not ... excuse from [its] reach ... an actor who does not himself commit ... the two or more predicate acts requisite to the underlying offense".

There is no requirement that each conspirator personally commit illegal acts in furtherance of the conspiracy or to accomplish its objectives. For example, for a conspiracy conviction it is not necessary to prove that the defendant agreed to personally commit the requisite acts, but only that he agreed that another violate § 1962(c) by committing two acts of racketeering activity. *U.S. v. Pryba*, 900 F.2d 748 (4th Cir. 1990).

In this case, Troy and Patti not only agreed that the other co-conspirators commit extortionate acts, but actively participated in those efforts by fabricating false evidence of the non-existing debt and by other actions.

### IV. CONCLUSION

For the foregoing reasons, Tatyana Babakaeva respectfully requests that this Court deny Defendants' Motion to Dismiss, or in the alternative, if the Court finds that Complaint is deficient, that the Court grant plaintiff Babakaeva leave to file amended Complaint.

Respectfully submitted this 29th day of June 2021.

*Tatyana Babakaeva*
Tatyana Babakaeva, *pro se*
1 Lynn Drive
Newport News, VA 23606
Phone: (757) 967-7711
e-mail: tatyana.babakaeva@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of June, 2021 a true and accurate copy of the foregoing Memorandum was mailed first-class, postage prepaid, and sent by e-mail to the following:

Christopher D. Davis, Esq.
Destinee B. Byers, Esq.
Davis Law, PLC
555 Belair Ave., Suite 340
Chesapeake, VA 23320
e-mail: destinee@davislawplc.com
       chris@davislawplc.com
*Counsel for Defendants PTR Investments, Inc.,
       Troy Robertson and Patricia Robertson*

Christy L. Murphy, Esq.
Bischoff Martingayle, P.C.
208 East Plume Street, Suite 247
Nofolk, Virginia 23510
Telephone: (757) 440-3546
Facsimile: (757) 440-3924
Email: clmurphjy@bischoffmatringayle.com
*Counsel for Defendants C.Jeffrey Moore and
       658 Waters Drive, LLC*

*Tatyana Babakaeva*
Tatyana A. Babakaeva, *pro sé*
1 Lynn Dr.
Newport News, VA 23606

19