**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

FILED

JUL 1 9 2021

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

TATYANA BABAKAEVA and )
OLGA GUSKOVA, )
)
Plaintiffs, )
)
v. )
) Civil Action No. 2:21-cv-267
PTR INVESTMENTS, INC, )
TROY ROBERTSON, )
PATRICIA ROBERTSON, )
658 WATERS DRIVE, LLC and )
C. JEFFREY MOORE, )
)
Defendants. )

---

### BABAKAEVA'S  MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FILED BY DEFENDANTS C.JEFFREY MOORE AND 658 WATERS DRIVE, LLC

Plaintiff, Tatyana Babakaeva, *pro se,* hereby respectfully submits her Memorandum in

Opposition to Motion to Dismiss Complaint filed jointly by defendants C.Jeffrey Moore

("Moore") and 658 Waters Drive, LLC ("Waters LLC") (hereafter, collectively "Defendants")

on June 28, 2021 (ECF No. 11) seeking dismissal of Complaint (ECF No. 1).

### I. INTRODUCTION

Defendants, by filing their joint "Memorandum in Support of their Motion to Dismiss

Complaint" (ECF No. 12), attempt to discharge themselves from their obligation to fairly

reimburse Plaintiffs for the losses caused by Defendants' unlawful conduct.

As will be shown below, Defendants in their Memorandum deploy baseless boiler-plate

arguments using, in part, inapplicable affirmative defenses, misrepresenting pleading standards,

mischaracterizing and/or ingnoring the factual allegations, introducing their own, incongruous,

versions of the facts, and citing to legal authorities that do not, in fact, support their argument.

Moreover, without having any reasonable grounds for a substantive argument in support of dismissal, Defendants engaged in *ad hominem* attack on Plaintiffs, specifically on Babakaeva. For example, Defendants notice that Babakaeva previously, more than ten years ago, sued law firms and attorneys, including successfully suing for FDCPA violations a law firm and its attorneys, though there is no relevancy of such Defendants' statement to any matters presented in Complaint.

This Babakaeva' Memorandum demonstrates that the facts stated in Complaint sufficiently and properly set forth the claims for relief under all the four Counts against the two Defendants.

Defendants Moore and Waters completely failed to defend, as required by Fed. R. Civ. P. 8(b) and/or 12(b), as to the cause of action asserted in Complaint as Count IV, Civil Rico Conspiracy. As such, Defendants' Motion to Dismiss Complaint is, in fact, a partial motion to dismiss in relation to Counts I, Count III and Count V of Complaint as against Defendants Moor and Waters. No responsive pleading or a motion responsive to the cause of action asserted in Count IV, Civil Rico Conspiracy, of Complaint was timely filed by Defendants.

<u>**Extraneous Materials**</u>

In Memorandum in Support of Motion to Dismiss Complaint Defendants introduce by proffer matters outside Complaint, without including any exhibits to support the factual allegations stated therein. Particularly, Defendants introduce their version of the state court proceedings. Pursuant to Roseboro Notice ¶3, Babakaeva "must identify all facts stated by [Defendants] to which Babakaeva disagrees and must set forth [her own] version of the facts ...". As Defendants did not provide any documents in support, Babakaeva will support her version of the facts with references only to the exhibits attached to Complaint and to the public records which demonstrate that Defendants' allegations of their version of facts are not true.

2

**Babakaeva's Version of the Facts, Given Pursuant to Roseboro Notice**

On or about January 27, 2021 Defendants mailed to Plaintiffs a demand (Compl. Exh. 11) that Plaintiffs immediately cease all use of words "658 Waters Drive", which was the main part of the address of the Plaintiffs' real estate property located at 658 Waters Drive in Virginia Beach, VA. Defendants threatened to obtain injunction precluding Plaintiffs from using the address of their own property, together with judgment for award of compensatory and punitive damages.

Plaintiffs were compelled to file an injunction case (Exhibit 1) in the state court to stop Waters and Moore from causing Plaintiffs monetary damages due to Defendants' slander of title and infringement of Plaintiffs' registered service mark[1] and for the related damages.

Starting from May 3, 2021 Plaintiff no longer had ownership rights to, and interest in, the registered service mark "658 Waters Drive", and therefore no longer had a reason and/or standing to pursue the injunction claim in the state court.

Discovery in the injunction case in the state court revealed that Waters had no business beyond litigating the claim against Plaintiffs, had no independent office, no employees, no capitalization, no income and no business plan. Due to Waters' lack of capitalization, judgment which Plaintiffs would obtain against Waters in the injunction case would not be satisfied and therefore would not serve the purpose to compensate the Plaintiffs' losses.

The only remaining matter in the case, imposition of appropriate sanctions on counsel for Defendants, was not relevant to any Plaintiffs' specific interests and, while Plaintiffs have

---

1 Defendants omitted to state in their brief the nature of the case, which was injunction. Also, Defendants did not disclose that: (a) Defendants sought dismissal of the injunction action solely on the ground of failure to join a party (Exhibit 2), which ground is expressly statutory excluded from valid reasons for dismissal; (b) Babakaeva filed motion for imposition of sanctions on counsel for Defendants for filing frivolous motion to dismiss (Exhibit 3); (c) unopposed Babakaeva's motion for sanctions was scheduled for hearing on June 7, 2021.

3

general interest in attorneys' conduct as related to court's filings, Plaintiffs feel that using the court proceedings solely for the purpose of upholding attorney's discipline would not be proper.

Thus, Plaintiffs non-suited the injunction case in the state court.

## II. STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63,570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012).

When reviewing a motion to dismiss, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. *Edwards v. City of Goldsboro,* 178 F.3d 231, 243-44 (4th Cir. 1999).

When rendering its decision, the court may also consider facts derived from sources beyond the four corners of the complaint, including documents attached to the complaint, documents attached to the motion to dismiss "so long as they are integral to the complaint and authentic," and facts subject to judicial notice under Federal Rule of Evidence 201. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Blankenship v. Manchin*, 471 F.3d 523, 526 n. 1 (4th Cir. 2006)).

## III. ARGUMENT

### A. Babakaeva Objects to Defendants' Introducing Extraneous Matters

In Memorandum in Support of a motion made under Rule 12(b)(6), Defendants introduced matters outside Complaint, and do so without providing supporting materials. For example, Defendants describe their version of the state proceedings in the action which was non-

suited, and expressly claim that the fact of non-suit should be accepted by this Court as an indication that Defendants prevailed in the non-suited action. Such Defendants' tactics is improper.

Babakaeva respectfully submits that this Court, in considering Defendants' Motion and the supporting brief, should exclude matters stated therein which are outside Complaint and disregard all arguments that involve such extraneous matters. Pursuant to Fed. R. Civ. P. 12(d), if matters outside Complaint are not excluded by the court, the motion must be treated as one for summary judgment under Rule 56, and Babakaeva must be given a reasonable opportunity to present all the material that is pertinent to the motion.

**B. Complaint  Properly States Claim for Personal Liability of Defendant C. Jeffrey Moore**

Defendants argue, in essence, that acts of the LLC should not be imputed to individual defendant who is its sole member. This Defendants' argument uses interpretation of Complaint which is precisely in reverse to what Complaint in fact alleges. Complaint describes certain unlawful acts committed by defendant Moore. Acts attributed to Waters are actually the acts committed by Moore and imputed to Waters. There is no legal ground to argue that individual is not liable for his own wrongdoings merely because he is the sole member of some LLC.

For example, Complaint states (Compl. ¶¶ 60, 64, 65) that Moore, among "all Defendants"[2], actively participated in fabrication of false evidence of the alleged debt. There is no reason why Moore should not be personally liable for the damages proximately caused to Plaintiffs by Moore's knowingly making false statements in the fabricated evidence. Similarly, Complaint contains statements (Compl. ¶¶ 64, 65) that on May 13, 2020 Defendants, including Moore, willfully and knowingly signed materially false statements with the express intent to use those statements as evidence of the debt which they were attempting to collect.

---

2  To describe acts in which all five defendants were actors, Complaint uses designation "Defendants" which includes: PTR Investments, Inc., Troy Robertson, Patricia Robertson, C.Jeffrey Moore and 658 Waters Drive, LLC.

Therefore, the argument made by Defendants that Moore is not personally liable for his own unlawful acts is without merit.

### C. Complaint  Properly and Sufficiently Pleads Defendants' FDCPA Violations

Defendants argue that the FDCPA claim asserted against Defendants is barred by the statute of limitations, and that Defendants are not debt collectors under 15 U.S.C. 1692a(6). Additionally, Defendants attempt to use, as grounds for dismissal, a claim of "absolute privilege" and the argument that Moore should be excluded from the FDCPA claim.

All these arguments are without merit.

The FDCPA "imposes civil liability on debt collectors for certain prohibited debt collection practices." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 576 (2010) (brackets and quotation marks omitted). It proscribes, among other things, "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," 15 U.S.C. § 1692d, the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt," id. § 1692e, and the use of "unfair or unconscionable means to collect or attempt to collect any debt," id. § 1692f.

To establish a claim under the FDCPA, a private plaintiff "must establish that: (1) the defendant is a 'debt collector'; (2) who took an action 'in connection with the collection of a[ ] debt'; and (3) the action violated the substantive proscriptions in those provisions." *Lipscomb v. The Raddatz Law Firm, P.L.L.C.,* 109 F. Supp. 3d 251, 256 (D.D.C. 2015); see also *Mazza v. Verizon Washington DC, Inc.,* 852 F. Supp. 2d 28, 35 (D.D.C. 2012).

1. The FDCPA violations are not barred by the statute of limitations

The statute of limitations for FDCPA claim runs for each violation, *Bender v. Elmore & Throop, PC,* 963 F. 3d 403 (4th Cir.2020). Complaint in this case alleges acts of FDCPA

6

violations committed by Defendants Moore and Waters on and after May 13, 2020, which is within one year of the date of filing of Complaint[3].

On May 13, 2020 Moore signed, on behalf of Waters, materially false statements which were intended to be used as evidence of debt in attempt of collecting the debt that was claimed to be transferred to Waters (Compl. ¶¶ 64, 65). Subsequently, on August 13, 2020 those fabricated documents were submitted to the court's consideration for the purpose of debt collection on behalf of Waters (Compl. ¶ 67).

On January 27, 2021 Waters sent to plaintiffs a nonsensical "cease-and-desist" letter demanding that plaintiffs immediately cease all use of the words which constitute the address of the plaintiffs' real estate property. Waters expressly threatened that, in case Guskova and Babakaeva ever use their own address again, Waters would sue Plaintiffs and obtain judgment against Plaintiffs for compensatory and punitive damages and obtain injunction precluding Plaintiffs from using the address of their property.

Defendants, in their Memorandum, observe that the "cease-and-desist" letter omitted a statement that the communication was in connection with debt collection, and solely on this ground, Defendants claim that the letter was not in connection with debt collection. However, Defendants do not explain what the basis for that letter may exist other than in connection with attempt to collect the non-existent debt. The fact that the letter did not include statement that it was communication in connection with attempt of debt collection is not dispositive[4].

---

3  Defendants deploy a straw-man argument claiming that, because some occurrences stated in Complaint are dated back to 2013, statute of limitation for Defendants' FDCPA violations ran for both Moore and Waters. In fact, Complaint brings claim for FDCPA violations only for the acts committed by Moore and Waters on and after May 13, 2020 (Compl. ¶¶ 64-67, 70-72, 75-79). The factual allegations which Defendants cite to make the straw-man argument, in fact, are listed in Complaint under the heading "Background and Prior Occurrences" and are not referenced in Complaint's "Causes of Action" section.

4  Defendants statement that the letter was merely *"cease-and-desist demand pertaining to use of LLC's business name"* is preposterous. Defendants' argument sounds as if "658 Waters Drive, LLC" were an old reputable business with its name registered as a trade or service mark, and as if Plaintiffs had created address "658 Waters Drive" specifically for the purpose

All such occurrences fall within one year of the date of filing of Complaint and therefore are not time barred.

Moreover, as of the time of writing of this Memorandum, Waters is being engaged, together with Alperin, in the continuous debt collection attempt using the fabricated false evidence of the non-existing debt (see, *e.g., 658 Waters Drive, LLC and Alperin Law PLLC v. Tatyana Babakaeva and Olga Guskova,* Virginia Supreme Court combined record Nos. 210354/210374). Such Waters' engagement in this baseless litigation constitutes a continuous, ongoing FDCPA violation.

2. Defendants are debt collectors under 15 U.S.C. §1692a(6)

Defendants argue that they are not debt collectors because they do not fall under the second clause of the definition 15 U.S.C. §1692a(6), which defines "debt collector" as "any person ... who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

Defendants, however, squarely fit the first clause of the definition 15 U.S.C. §1692a(6), which defines debt collector as *"any person who uses any instrumentality of interstate commerce or the mails in any business the principle purpose of which is the collection of any debts [emphasis added]."*

The only reason and purpose of organizing and maintaining of Waters is to serve as an

---

to harass such business. In fact, public records show that address "658 Waters Drive" in Virginia Beach was in existence for several decades, and that the real estate property at that address was acquired by Guskova and Babakaeva long before Alperin applied, on behalf of Moore, for registration of "658 Waters Drive, LLC". Actually, Alperin and Moore thoughtfully chose the name for their business with the specific purpose to use the business name as a basis to harass, oppress and abuse Plaintiffs (Compl. ¶ 56), such as by making nonsensical demand that Plaintiffs stop using the address of their real estate property. The letter was sent in pursuing the sole purpose of Waters' business, which is to facilitate collection of the non-existing debt. The demand to cease-and-desist "any use" of words "658 Waters Drive", combined with the threat of legal action, had natural consequence to harass, oppress and abuse Plaintiffs in connection with Defendants' attempt to collect the non-existing, which act was committed in violation of 15 U.S.C. § 1692d.

instrument to facilitate the attempt of collection of non-exiting Plaintiffs' debt (Compl. ¶ 53). The only business activity in which 658 Waters Drive, LLC is engaged is litigation in attempt to collect the non-existing debt purportedly secured by the real estate located at the address "658 Waters Drive". Waters does not conduct, and has never planned to engage in, any other business activity (Compl. ¶¶ 54, 55). Further, Moore and Waters indisputably use mails in said litigation. Thus, Moore and Waters represent *"persons who use ... mails ... in their business principal purpose of which is the collection of [the non-existing] debt"*. Consequently, Defendants are "debt collectors" under the first clause of 15 U.S.C. §1692a(6).

3. Defendants were attempting to collect debt which was not "their own"

Defendnats claim that they are exempt from FDCPA by the rule that excludes those debt collectors that collect their own debt. In fact, Defendants did not collect "their own" debt simply because they did not own, and were not owed, the purported debt.

Moreover, even if the purported debt actually existed, which it is not, and even if Defendants had the original promissory Note or a valid lost-note affidavit, which they do not, Defendants never "purchased" the debt because it was subject to notice of *Lis Pendens* (Compl. ¶ 48)[5].

Accordingly, Defendants are debt collectors as defined by FDCPA under 15 U.S.C. §1692a(6) and are liable for the FDCPA violations which they committed on and after May 13, 2020.

4. Defendants' "absolute privilege" claim is not a valid defense

In stating opposition to FDCPA claim, Defendants attempt, inaptly, to invoke affirmative defense of "absolute privilege" in regard to the FDCPA violations due to patently false sworn

---

5 Under common-law of *Lis Pendens*, *pendente lite* purchaser obtains only contingent interest in the chattel and has to wait the outcome of the litigation against his vendor to learn what he, in fact, purchased. In this case, Defendants learned that they purchased nothing (Compl. Exh. 1)

9

statements presented by Waters to the state court. Apparently, Defendants also attempt to apply "absolute privilege" concept in regard to the fabricated false evidence which was created by Moore outside the court and subsequently submitted to the court's consideration.

This attempt is misplaced. The concept of "absolute privilege" is an affirmative defense available in cases for common-law tort of defamation, when defendant is prosecuted for libel in connection with false testimony or other defamatory statements made during court proceedings. FDCPA, however, is not a defamation tort claim, therefore, "absolute privilege" is simply not applicable here.

Debt collection activity and communications in connection with debt collection which occur in the course of legal proceedings are not exempt from FDCPA provisions, see, *e.g., Heintz v. Jenkins*, 514 U.S. 291, 297 (1995) (*"For one thing, the plain language of the Act itself says nothing about retaining the exemption in respect to litigation."*). Accordingly, Defendants are liable under FDCPA for making false or misleading statements and/or communications during court proceedings. Additionally, Defendants are liable under FDCPA for making false or misleading communications related to court filings.

## 5. Moore is NOT excluded from liability and is subject of individual claim for FDCPA violations committed by him personally

While there is a split of decisions among circuits whether officers or directors of a debt collector company may be personally liable, without piercing corporate veil, for FDCPA violations committed by the company, there is no disagreement regarding individual liability of a member of an LLC. See, e.g., *Kistner v. the Law Offices of Michael*, 518 F.3d 433 (6th Cir. 2008) (holding that a member of LLC is individually liable for FDCPA violation of the LLC without piercing LLC veil because he was personally involved in the abusive debt collection practice).

In this case, Moore on May 13, 2020 personally signed the documents constituting

10

fabricated false evidence of the non-existing debt intended to be used, and actually used, in non-judicial and judicial proceedings (Compl. ¶ 64, 65), so he is personally liable for his FDCPA violations.

### D. Complaint Properly and Sufficiently Pleads Slander of Title Claim

Defendants attempt to assert that slander of title claim is barred by statute of limitations; that Complaint does not allege that Defendants "put something to record that is false"; that Complaint does not state factual support that Defendants acted with malice when they slandered Plaintiffs' title; and that Plaintiffs failed to claim special damages.

All these Defendants' arguments are without merit and are, in part, frivolous.

1. Defendants made public records falsely implying that Defendants hold superior title to Plaintiffs' real estate

Defendants made public records that imply that Defendants have the superior right to control Plaintiffs' real estate. Specifically, words "658 Waters Drive" as registered on behalf of Defendants with the Virginia State Corporation Commission in connection with business located in Virginia Beach, Virginia make specific and unambiguous reference to the address 658 Waters Drive, Virginia Beach, Virginia[6]. No other connotation may be established for words "658 Waters Drive" within local community and, moreover, in the State of Virginia other than in connection with the address of the Plaintiffs' property. Further, transfer of the purportedly secured loan is commonly associated with filing of certificate of transfer with the state court[7]. Such filing created public record that falsely encumbered real estate property by lien purportedly held by Defendants.

---

6  The Waters' principal office, as shown in the public record of Virginia State Corporation Commission, 468 Investors Pl., Virginia Beach is within about one mile from 658 Waters Drive, Virginia Beach.

7  As can be reasonably inferred from statement of facts presented in Complaint (Compl. ¶¶ 60, 64-67), the May 13, 2020 transaction related to the transfer of the purported debt from PTR to Waters included filing of the certificate of transfer of deed of trust, which falsely implied that Waters became lien holder for the Property (the document designated "Certificate of Transfer" is a public record of the state court, Exhibit 4).

2. Slander of title cause of action is within the allowed time period of statute of limitations

Defendants' argument regarding statute of limitation for slander of title claim is completely disconnected from the cause of action asserted in Complaint.

When the slanderous act caused economical injury to the property, limitation period is controlled by Va Code 8.01-243(B) which establishes five-year statute of limitation after the time of action accrues, *Koz v Wells Fargo Home Mortg.*, 83 Va. Cir. 96 (2011). Further, "the cause of action begins to accrue once the conduct has ceased", *Id.* Defendants on March 2, 2020 organized and registered business with the name which creates, in the eyes of third parties, false implication that Defendants had superior right to the Plaintiffs real estate property.

As a part of the May 13, 2020 purported "loan purchase transaction", Defendants made filing with the state court of the certificate of transfer of Deed of Trust, which expressly state Defendants' claim to the title of the real estate property owned by Plaintiffs.

All those acts committed by Defendants occurred with five years prior to filing of this case.

3. Complaint sufficiently pleads factual ground for Defendants' malice in their slandering title

Arguing for dismissal of the slander of title claim, Defendants misrepresent the pleading standard. Defendants attempt to support their statement of standard for pleading malice by citing to *Preston v. Land*, 255 S.E.2d 509 (1979). The problem with such Defendants argument is that *Preston* say nothing about pleading malice with connection to a slander of title claim. *Preston* deals with the questions of the standard for jury instructions regarding sufficiency of evidence to demonstrate malice in a case where standard of proof was to defeat qualified privilege associated with proceedings before the state board. Such pleading standard is clearly inapplicable: when slandering Plaintiffs' title, Moore and/or Waters did not testify in proceedings before state board and did not engage in any similar activity. Therefore, Defendants claim of requiring higher

pleading standard for malice is not justified by *Preston.*

Complaint sets forth the fact that at the time of making public record of business name "658 Waters Drive" operating in Virginia Beach, Virginia, Defendants had actual knowledge that they did not have any right of possession or control, and/or interest in and title to, the real estate property located at 658 Waters Drive, Virginia Beach, Virginia. Moreover, Defendants had actual notice that said real estate property was bound by notice of *Lis Pendens* which was filed and duly recorded in connection with the quiet title action (Compl ¶ 48). Defendants willfully created slanderous public record of the business with the specific purpose to make an appearance that Defendants were actual parties having superior control of and title to the real estate property (Compl ¶ 53). Defendants had actual knowledge of the fact that evidence of the purported debt was false, in that Defendants false evidence of the debt were fabricated by Defendants and by others acting with the informed consent of Defendants (Compl. ¶¶ 55, 57). The purpose of making record of the business with such name was to harass and oppress Plaintiffs and with the goal to obtain from Plaintiffs property and money to which Defendants were not entitled (Compl. ¶ 56).

Even if the factual allegation of Defendants' bad motive in publishing slanderous statement were not sufficiently stated in Complaint, which it is, Defendants' Memorandum sufficiently remediates such hypothetical deficiency. Indeed, Defendants claim that the letter dated January 27, 2021 was "cease-and-desist demand", which statement discloses the Defendants motive behind their choice for the name of the business acts: to claim Defendants' superior title and Defendants' right to control over the Plaintiffs' real estate property and "all use" of Plaintiffs' property address. The motive was, as clearly demonstrated by the letter and by the Defendants' Memorandum, to injure Plaintiffs' property rights and to disable property.

13

4. Plaintiffs sufficiently pled special damages proximately caused by Defendants' slander of title

Defendants wrongfully claim that damages stated in Complaint are "general damages", in contrast with "special damages" which are a necessary element for the slander of title claim. In support of such claim Defendants quote from a court opinion *Norfolk & W. Ry. Co. v. Spears, 65. S.E. 482 (Va. 1909)* rendered in an accident-caused personal injury case, where "the common consequence of the wrong complained of" was plaintiff's nervous disorder, which is certainly a sort of general damages (see *infra*). Defendants argument based on such quotation is devoid of any substance: in absence of an objective test, it leaves the matter to a subjective assessment as to what should be considered "unusual and extraordinary nature", which would not produce an answer with acceptable certainty.

Actually, the legal definition of damages, with the objective test for classification of damages as either "special" or "general", is well established, see, *e.g.*, definition provided by Legal Information Institute, *https://www.law.cornell.edu* ("In tort law, special damages are damages like car dents or medical expenses that can actually be ascertained, and they are contrasted with general damages, which refer to damages for things like intentional infliction of emotional distress which do not have a set monetary cost.")

In other words, special damages cover losses that have a measurable dollar amount, such as medical expenses, transportation costs, loss of wages, loss of earning capacity, property damage, costs of property replacement or repair.

General damages are intangible, non-monetary losses that do not have an exact dollar amount, such as pain and suffering, mental anguish, lower quality of life, loss of companionship, physical disfigurement or impairment.

Plaintiffs do not seek recovery of any general damages.[8] All the damages listed in

---

8  For example, though Plaintiff Guskova, who had just delivered a newborn, suffered mental anguish as a reasonably foreseeable and the intended effect of Defendants' letter dated January 27, 2021, this Complaint does not seek general damages caused by such occurrence.

Complaint have measurable, accounted for and provable dollar amounts which include loss of income, loss of profits, repair and property maintenance costs, transportation costs, and thus, indisputably, constitute "special damages".

### E. Defendants Do not Seek Dismissal of Count IV, Civil RICO Conspiracy Claim

<u>1. Defendants did not present defense as to civil RICO conspiracy cause of action</u>

Defendants' Motion to Dismiss Complaint (ECF No. 11) does not specifically answer any causes of action asserted by Complaint (ECF No. 1) but incorporates the defenses from the Memorandum in Support of Motion to Dismiss Complaint (ECF No. 12). Memorandum does not address cause of action asserted in Count IV, Civil RICO Conspiracy. Memorandum does include a heading of a section designated *"D. The plaintiffs have failed a civil RICO claim"*, but it does not state defense to the claim of Civil RICO <u>Conspiracy</u> actually asserted by Plaintiffs.

Such heading in Defendants' Memorandum is not merely a misnomer: the arguments presented in that section specifically address common elements of a <u>civil RICO</u> cause of action, but do not cover elements of a <u>civil RICO conspiracy</u> cause of action. The two are distinctive, separate torts with different elements of causes of action. Plaintiffs did not assert a civil RICO claim against either of Defendants. As such, Defendants' argument regarding <u>civil RICO claim</u> represents a classic straw-man fallacy.

<u>2. Complaint sufficiently pleads facts supporting Defendants' liability for civil RICO conspiracy</u>

Babakaeva incorporates here by reference the arguments presented by Babakaeva's first Memorandum in Opposition (ECF. No. 14), which covers pertinent matters including, among others, existence of Enterprise and its engagement in the interstate commerce, Enterprise's unlawful goal, continuing nature of Enterprise's racketeering activity, relationships among the Enterprise's participants, Enterprise's longevity, and conspiracy among defendants to commit acts toward the common unlawful goal of the Enterprise.

15

As Babakaeva showed in the first Memorandum, Defendants Moore and Waters joined

Enterprise in the beginning of March of 2020.

Under *Salinas v. United States,* 522 U.S. 52, 118 S. Ct. 469 (1997), it is not necessary

that the substantive violation actually be consummated for the conspiracy violation to be

complete. It is sufficient that the defendant has agreed to further an endeavor which, if

consummated, would satisfy all elements of a RICO offense. RICO's conspiracy provision "does

not ... excuse from [its] reach ... an actor who does not himself commit ... the two or more

predicate acts requisite to the underlying offense".

There is no requirement that each conspirator personally commit illegal acts in

furtherance of the conspiracy or to accomplish its objectives. For example, for a conspiracy

conviction it is not necessary to prove that the defendant agreed to personally commit the

requisite acts, but only that he agreed that another violate § 1962(c) by committing two acts of

racketeering activity. *U.S. v. Pryba*, 900 F.2d 748 (4th Cir. 1990).

In this case, Moore and Waters not only agreed that the other co-conspirators commit

racketeering acts, but agreed to actively participate in the racketeering activity of Enterprise and

both willfully committed acts in furthering Enterprise's goal, while having actual knowledge of

the unlawful nature of Enterprise's activity and goal.

For example, Complaint states that Alperin and Moore, acting in concert and with

agreement and assistance of other defendants, forged public records by registering with the State

Corporation Commission a shell company, 658 Waters Drive, LLC, which company was not

intended to engage in any lawful business but had an express purpose to serve as instrument in

litigation in attempt of collecting non-existing debt by extortionate means (Compl. ¶¶ 53-56;

Exh. 9).

During 2020 Defendants Moore and Waters were acting, in concert with Alperin and

16

other defendants, in furthering the scheme by fabricating and transferring to Waters false evidence of the non-existing debt. Three attorneys representing Alperin, PTR and Waters knew about such circumstances, but materially misrepresented to the state court the actual status of their clients and their relationships, nature of Alperin's interest in the subject matter of the state action, and thus prevented the state court from assessing the substance of the controversy. Such misrepresentation, together with intentional use of willfully fabricated false evidence, constitute extrinsic fraud both on a state trial court (Compl. ¶¶ 70-72) and on the state highest court (Compl. ¶ 73), which is a crime against administration of justice.

### F. Complaint Sufficiently States Factual Ground for Piercing the LLC Veil

#### 1. Waters' purpose is unlawful

Defendants claim that Plaintiffs failed to plead factual support for piercing the LLC veil, because, as Defendants assert, *"there is nothing wrong with a business having one purpose and one member."* This statement is not correct and reflects the systematic problem with Defendants' line of arguing. The statement should be extended to make it meaningful and correct: *"there is nothing wrong with a business having one purpose and one member, <u>as long as the purpose is lawful and the member is not using the business to perpetrate fraud.</u>"*

As the first thing, the business was originally organized with unlawful purpose, which is to be used as instrument in litigation in attempt to collect non-existing debt by extortionate means (Compl. ¶¶ 53-56 ).

In *Perpetual Real Estate Services, Inc. v. Michaelson Properties, Inc.* 974 F.2d 545 (4th Cir. 1992) the court observed that there was no evidence that defendant corporate owner was attempting to defraud anybody, and that therefore there was no sufficient ground to pierce the corporate veil. The instant case is distinguishable in that the exact opposite about the business owner is true: Moore attempted to defraud the court by using fabricated false evidence of the

17

non-existing debt (Compl. ¶¶ 60, 64-66) and organized, with assistance of the purported "foreclosure trustee", the sham business entity specifically for such purpose.

The specific purpose of Waters is "to serve as instrumentality in pursuing unlawful goal to extort money and property form Plaintiffs" (Compl. ¶ 140). Moore used Waters as an instrument to perpetrate extrinsic fraud on court with the goal to obtain money and property from Plaintiffs (Compl. ¶141).

Another purpose of Waters is now being pursued by said Defendants' argument – to protect Moore from liability for damages caused by his unlawful acts (Compl. ¶ 57). As Waters is substantially "under-capitalized", in that it has no capitalization and/or tangible assets and/or any business income (Compl. ¶ 54), there is no expectation that any judgment entered against Waters may be satisfied. This result would be obviously inequitable unless such judgment is accompanied by decree of piercing the LLC veil.

2. Moore used Waters as sham entity

Defendants claim that plaintiffs are required to plead that Moore used 658 Waters Drive as a *"device or sham used to disguise wrongs, obscure fraud, or conceal crime"*.

Complaint, in fact, pleads precisely the above, and more. "The express goal of organizing Waters was to use it … as a sham party acting on direction of Alperin," (Compl. ¶ 55). Complaint describes that Waters was organized to keep the extortionate scheme alive: to avoid imminent adverse summary judgment against PTR which would terminate the debt collection attempt, Alperin and Moore organized Waters and transferred to Waters false evidence of the non-existing debt, including newly fabricated false evidence (Compl. ¶¶ 52, 53, 55, 57).

Additionally, Waters affirmatively stated (Compl. Exh. 11) that Waters "was using the Business Name [658 Waters Drive] since June of 2020 when 658 Waters Drive, LLC filed a Motion to Intervene in the lawsuit styled as *Tatyana A. Babakaeva and Olga Guskova v. PTR*

18

*Investments, Inc.*, Case Number CL-18-5740". This confirms that Waters had no other purpose except being used in the litigation as a sham entity.

### 3. Waters was instrument in effort to hide Alperin's actual role in relation to the purported debt

Defendants do not address the fact that Waters was organized by Alperin, who was, and is, acting as Moore's and Water's attorney. At the same time, Alperin was claimed to serve in capacity of "foreclosure trustee" of the Deed of Trust, which is the same Deed of Trust that Alperin "helped" to transfer from PTR to Waters. Alperin also claim to own interest in the purported debt an the Deed of Trust. Such Waters' business activity is improper and unlawful. Defendants just plainly ignore the corresponding paragraphs (Compl. ¶ 52-73) of Complaint.

In discovery produced by Moore and Waters in the state court it was revealed that Alperin is serving for both Moore and Waters in capacity of their attorney (Compl. ¶¶ 70, 71; Exh. 12). Alperin also was the organizer and the initial register agent for Waters (Compl. ¶ 72; Exh. 9). In the filing to the Supreme Court of Virginia Alperin claimed to own interest in the purported debt (Compl. ¶ 73).

Earlier, in the proceeding in the quiet title case, Alperin and Waters stated, under oath, that Alperin was acting in capacity of "foreclosure trustee" in regard to Deed of Trust which was purportedly assigned to Waters, and that Alperin's functions were "very ministerial".

In cases where parties deal with false testimony of a witness, they have an opportunity to counter the witness' testimony with cross-examination, impeaching by contradicting evidence or statements, *etc.*. In the quiet title case, in contrast, Plaintiffs did not have a procedural device to illicit the truth from Alperin's and Water's counsel who, while presumed being under oath, acted in concert to mislead the court in response to the court's inquiry regarding status of Alperin[9]. Waters and Alperin represented to the state court that they were attempting to intervene in the

---

9  The state court did not have means to perceive the actual status of Alperin as attorney for Moore and Waters.

quiet title action as independent parties with independent interests (Compl. ¶ 71).

The forgoing facts sufficiently establish ground for piercing the LLC veil as they show that Moore, acting in concert with Alperin, used the LLC as a sham to "disguise" legal "wrong", see *Perpetual at 548*.

## IV. CONCLUSION

For the foregoing reasons, Tatyana Babakaeva respectfully requests that this Court deny Defendants' C.Jeffrey Moore and 658 Waters Drive, LLC's Motion to Dismiss Complaint, or in the alternative, if the Court finds that Complaint is deficient, that the Court grant Plaintiffs leave to file amended Complaint.


Respectfully submitted this 19th day of July 2021.




Tatyana Babakaeva, *pro se*
1 Lynn Drive
Newport News, VA 23606
Phone: (757) 967-7711
e-mail: tatyana.babakaeva@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of July, 2021 a true and accurate copy of the foregoing Memorandum was mailed first-class, postage prepaid, to the following:

Christopher D. Davis, Esq.
Destinee B. Byers, Esq.
Davis Law, PLC
555 Belair Ave., Suite 340
Chesapeake, VA 23320
e-mail: destinee@davislawplc.com
        chris@davislawplc.com
*Counsel for Defendants PTR Investments, Inc.,*
        *Troy Robertson and Patricia Robertson*


Christy L. Murphy, Esq.
Bischoff Martingayle, P.C.
208 East Plume Street, Suite 247
Nofolk, Virginia 23510
Telephone: (757) 440-3546
Facsimile:  (757) 440-3924
Email: clmurphjy@bischoffmatringayle.com
*Counsel for Defendants C.Jeffrey Moore and*
        *658 Waters Drive, LLC*


*Tatyana Babakaeva*

Tatyana A. Babakaeva, *pro sé*
1 Lynn Dr.
Newport News, VA 23606